2000 ME 91

**Thomas G. ADELMAN et al.**

v.

**TOWN OF BALDWIN and WMTW Holding Corp.**

Supreme Judicial Court of Maine.

Argued May 2, 2000.

Decided May 17, 2000.

---

John C. Bannon, (orally), Murray, Plumb & Murray, Portland, for plaintiffs.

Catherine R. Connors, (orally), Matthew D. Manahan, Portland, (for WMTW Holding Corp.), David A. Lourie, (orally), Cape Elizabeth, (for Town of Baldwin), for defendants.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Thomas G. Adelman [1] appeals from a judgment entered in the Superior Court (Cumberland County, *Mills, J.*) (1) granting WMTW's and the Town's motion to strike his independent claim of bias because it was duplicative of the Rule 80B appeal; (2) denying his Rule 80B appeal; and (3) granting a summary judgment stating that an amendment to the Baldwin Land Use Ordinance was consistent with Baldwin's Comprehensive Plan. Adelman argues that the court erred in its rulings. We disagree and affirm the judgment.

## I. FACTS

[¶ 2] WMTW filed an application for a conditional use permit to construct a television tower in Baldwin in May 1998.[2]

---

1. There are eleven appellants: Thomas G. Adelman, George Anderson, Nancy Anderson, Daniel Billings, Laurie Downey, Clare Husvar, Joseph Husvar, Charles Locke, Mark Miller, Lillian Rines, and Sylvia L. Thompson. Our reference to Adelman indicates all ten other appellants.

2. Article IX § 3 of the Baldwin Land Use Ordinance outlines the requirements for a conditional use permit:

A conditional use may be granted by the Planning Board only in the event that the applicant has established to the satisfaction of the Planning Board that:
(1) Neither the proposed use nor the proposed site upon which the use will be located is of such a character that the use will have significant adverse impact upon the value or quiet possession of surrounding properties greater than would normally occur from such a use in the district. In

WMTW filed its application pursuant to a recent amendment to the Baldwin Land Use Ordinance that permitted communications towers as a conditional use in highlands and rural districts.[3] WMTW planned to build its communications tower on 322 acres of land, 320 acres of which to be available for hunting and hiking and less than two acres for the proposed tower and security fence.

[¶ 3] In response to WMTW's application, the appellants organized into a community action group called Community Advocates for the Saddleback Hills (CASH) and sought a six-month moratorium on the granting of conditional use permits for communications towers. The Town Selectmen scheduled a referendum vote on the moratorium for August 11, 1998; the moratorium was defeated at a town-wide election.

[¶ 4] The Planning Board held public hearings on the conditional use permit on July 9 and July 23. At these hearings, WMTW and many members of the public presented evidence for and against the conditional use permit. At the July 27th meeting, the Board decided that WMTW satisfied the criteria necessary for the permit, but the Board postponed its final determination until the next meeting to impose a list of conditions on the permit. Despite WMTW's request to have the Board vote on the permit before the moratorium vote, the Board scheduled its next meeting for August 27th. At the August 27th meeting, the Board unanimously approved the permit with eleven conditions. Adelman appealed to the Zoning Board of Appeals.

[¶ 5] The Zoning Board of Appeals held a public hearing and denied Adelman's appeal by a three to two vote. Adelman then filed an appeal in the Superior Court pursuant to Rule 80B and also sought a declaratory judgment that the tower amendments to the Baldwin Land Use Ordinance were inconsistent with Baldwin's Comprehensive Plan. Adelman included an independent claim of bias against the Planning Board in his Superior Court complaint.

reaching a determination on this standard, the Planning Board shall consider:

(a) the size of the proposed use compared with surrounding uses;

(b) the intensity of the proposed use, including amount and type of traffic to be generated, hours of operation, expanse of pavement, and similar measures of intensity of use, compared with surrounding uses;

(c) the potential generation of noise, dust, odor, vibration, glare, smoke, litter and other nuisances;

(d) unusual physical characteristics of the site, including size of the lot, shape of the lot, topography, and soils, which may tend to aggravate adverse impacts upon surrounding properties;

(e) the degree to which landscaping, fencing, and other design elements have been incorporated to mitigate adverse impacts on surrounding properties.

(2) Municipal or other facilities serving the proposed use will not be overburdened or hazards created because of inadequate facilities. In reaching a determination on this standard, the Board shall consider:

(a) the ability of traffic to safely move into and out of the site at the proposed location;

(b) the presence of facilities to assure the safety of pedestrians passing by or through the site;

(c) the capacity of the street network to accommodate the proposed use;

(d) the capacity of the storm drainage system to accommodate the proposed use;

(e) the ability of the town to provide necessary fire protection services to the site and development

(3) The natural characteristics of the site, including topography, drainage, and relationship to ground and surface waters and flood plains, shall not be such that the proposed use when placed on the site will cause undue harm to the environment or to neighboring properties.

Baldwin Land Use Ordinance, art. XI, § 3(1) & (3).

3. The Tower Amendment added the following definition to the conditional uses permitted in the highlands and rural districts: "Communications Tower—a structure for the support of antennas and reflectors used in broadcast, point-to-point and relay communications, including but not limited to television, radio, cellular, utility, PCS, MMDS and community repeaters."

The court struck the independent bias claim as duplicative of the Rule 80B appeal; denied the Rule 80B appeal; and granted a summary judgment in favor of the town finding the tower amendments to be consistent with Baldwin's *Land Use Ordinance*. This appeal followed.

## II. INDEPENDENT BIAS CLAIM

■ [¶ 6] Adelman argues that the appellants were entitled to bring an independent claim of bias pursuant to 30–A M.R.S.A. § 2605 (1996).[4] WMTW and the Town assert that the court properly struck the bias count because bias may be addressed in a Rule 80B appeal. We review motions to strike for abuse of discretion. *See McNutt v. Johansen*, 477 A.2d 738, 740 (Me.1984) (reviewing denial of motion to strike default judgment for abuse of discretion); *Michaud v. Steckino*, 390 A.2d 524, 531 (Me.1978) (reviewing denial of motion to strike testimony for abuse of discretion).

■ [¶ 7] Rule 80B addresses appeals of government action, including the issue of bias by municipal planning boards. *See* M.R. Civ. P. 80B; *Ryan v. Town of Camden*, 582 A.2d 973, (Me.1990) (addressing issue of board member bias in Rule 80B appeal). Rule 80B(d) allows an appellant to add facts to the administrative record for a trial of the facts when an appellant establishes, with sufficient particularity, the need for a trial of such facts. *See Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 241. The issue of bias is properly addressed in the Rule 80B appeal because 80B(d) provides a specific mechanism for augmenting the record if necessary to show bias. *See id.*[5] Adelman's allegations of bias arose from the Planning Board's conduct concerning the issuance of the conditional use permit. These allegations are (and were) properly addressed in the Rule 80B appeal—not in an independent claim of bias, which would be duplicative of the Rule 80B appeal. The Superior Court, therefore, did not exceed the bounds of its discretion by striking the independent bias claim.

## III. RULE 80B APPEAL

■ [¶ 8] When a Zoning Board of Appeals and the Superior Court act in their

---

4. Section 2605 of Title 30–A states in pertinent part:

   Certain proceedings of municipalities, counties and quasi-municipal corporations and their officials are voidable and actionable according to the following provisions.
   1. Voting. The vote of a body is voidable when any official in an official position votes on any question in which that official has a direct or an indirect pecuniary interest.

   ❋  ❋  ❋  ❋  ❋  ❋

   4. Direct or indirect pecuniary interest. In the absence of actual fraud, an official of a body of the municipality, county government or a quasi-municipal corporation involved in a question or in the negotiation or award of a contract is deemed to have a direct or indirect pecuniary interest in a question or in a contract where the official is an officer, director, partner, associate, employee or stockholder of a private corporation, business or other economic entity to which the question relates or with which the unit of municipal, county government or the quasi-municipal corporation con-

   tracts only where the official is directly or indirectly the owner of at least 10% of the stock of the private corporation or owns at least a 10% interest in the business or other economic entity.
   When an official is deemed to have a direct or indirect pecuniary interest, the vote on the question or the contract is not voidable and actionable if the official makes full disclosure of interest before any action is taken and if the official abstains from voting, from the negotiation or award of the contract and from otherwise attempting to influence a decision in which that official has an interest. The official's disclosure and a notice of abstention from taking part in a decision in which the official has an interest shall be recorded with the clerk or secretary of the municipal or county government or the quasi-municipal corporation.
   30–A M.R.S.A. § 2605 (1996).

5. Adelman attempted to augment the record and establish bias with a Rule 80B(d) motion, but the facts alleged in his motion failed to establish a claim of bias with sufficient particularity. *See Baker's Table*, ¶ 9, 743 A.2d at 241.

appellate capacity, we review the Planning Board's decision directly for "error of law, abuse of discretion or findings not supported by substantial evidence in the record." *See Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368, 372 (quoting *Veilleux v. City of Augusta*, 684 A.2d 413, 415 (Me.1996)). The parties to the present case agree that the Board of Appeals reviewed the decision of the Planning Board in its appellate capacity. We, therefore, directly review the Planning Board's decision. *See id.*

### A. Error of Law

[¶ 9] Adelman asserts that the Planning Board committed an error of law by applying the wrong burden of proof when assessing whether WMTW satisfied the criteria for the conditional use permit. WMTW and the Town contend that the Planning Board did not apply the wrong burden of proof. Article IX, § 3 requires the applicant to establish "to the satisfaction of the Planning Board [that the requisite criteria exists]." Baldwin Land Use Ordinance, Article IX, § 3. Although he initially advised the Board to apply an erroneous standard, the Town's counsel notified the Planning Board of his error and the proper standard on July 19, 1998—five days before the second public hearing and five days before the Board's deliberations. The Planning Board expressly applied the proper standard when it considered WMTW's application. Thus, the Planning Board did not commit an error of law.

### B. Abuse of Discretion

[¶ 10] Adelman asserts that the Planning Board abused its discretion because it was biased. Adelman bases his bias argument on the employment of Planning Board Chairman, Norman Blake, and on statements made by Chairman Blake and by another Planning Board member, Josiah Pierce. At the beginning of the application process, in the presence of WMTW, the Town's counsel and twenty-two members of the public, Chairman Blake announced that he worked for Shively Labs; that Shively Labs built FM antennas, low power TV antennas, and transmission lines; and that he could not profit in any way from WMTW's application. Blake polled the members of the Board about whether they thought Blake had a conflict of interest and none of the members thought a conflict existed. A member of the public asked the entire Board if they were impartial and they all answered yes. Blake also left the employ of Shively Labs before he decided upon the conditional use permit.

[¶ 11] In defending the Planning Board decision before the Zoning Board of Appeals, Blake and Pierce made statements that indicated they applied their personal experiences when discerning the credibility of contradictory evidence presented before the Planning Board. Adelman maintains that because the Planning Board members may have relied on their own personal experiences to judge the evidence before it, the Board impermissibly relied on extrinsic evidence. This argument is not supported by law. Although it is impermissible for a Board member to rely on extrinsic evidence when adjudicating issues before the Board, a Board member may rely on competent personal knowledge. *Compare City of Biddeford v. Adams*, 1999 ME 49, ¶ 10, 727 A.2d 346, 349 (stating that an administrative board acts improperly if it considers evidence that is not part of the record in reaching its decision) *with Pine Tree Telephone & Telegraph Co. v. Town of Gray*, 631 A.2d 55, 57 (Me.1993) (recognizing well-established law that Planning Board members may employ their competent personal knowledge). The transcripts of the Planning Board hearings and its deliberations reflect that no member of the Board relied on extrinsic evidence. The members' statements before the Zoning Board of Appeals indicate that the Planning Board members permissibly employed their per-

sonal experiences to discern fact from fiction. *See Pine Tree,* 631 A.2d at 57.

## C. Substantial Evidence in the Record

[¶ 12] Adelman next maintains that the Planning Board's approval of the conditional use permit was unsupported by competent evidence and does not comply with the Land Use Ordinance. WMTW and the Town contend that substantial evidence supported the Planning Board's decision. Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion; the possibility of drawing two inconsistent conclusions does not render the evidence insubstantial. *See Sproul,* ¶ 8, 746 A.2d at 372 (quoting *Veilleux v. City of Augusta,* 684 A.2d 413, 415 (Me.1996)). We will not substitute our own judgment for the Planning Board's judgment. *See Twigg v. Town of Kennebunk,* 662 A.2d 914, 916 (Me.1995). To vacate the Planning Board's findings, Adelman must demonstrate that no competent evidence supports the Planning Board's conclusions. *See id.* Adelman is unable to satisfy this burden.

[¶ 13] Adelman claims that WMTW failed to satisfy the criteria of section 3(1) and 3(3) for a conditional use permit as required by article IX, § 3 of the Baldwin Land Use Ordinance. Section 3(1) provides that the proposed use must not have a "significant adverse impact upon the value or quiet possession of surrounding properties greater than would normally occur from such a use in the district," and that the Board must consider five criteria when making this determination. The Board is required to consider:

(a) the size of the proposed use compared with surrounding uses;

(b) the intensity of the proposed use, including amount and type of traffic to be generated, hours of operation, expanse of pavement, and similar measures of intensity of use, compared with surrounding uses;

(c) the potential generation of noise, dust, odor, vibration, glare, smoke, litter and other nuisances;

(d) unusual physical characteristics of the site, including size of the lot, shape of the lot, topography, and soils, which may tend to aggravate adverse impacts upon surrounding properties;

(e) the degree to which landscaping, fencing, and other design elements have been incorporated to mitigate adverse impacts on surrounding properties.

Baldwin Land Use Ordinance, article IX, § 3(1).

[¶ 14] Substantial testimony supported the Planning Board's conclusion that WMTW satisfied this criteria. The testimony offered by WMTW indicated that the completed WMTW tower would not have a significant negative impact on the surrounding property values in the Town of Baldwin and that any impact would not be greater than would normally occur from such a use in the zoning district. The opponents to the permit presented evidence stating that the property value may decrease by five to fifteen percent. The Board is not bound to accept any particular evidence as true; as factfinder, it has the obligation to determine credibility. *See Sproul,* ¶ 9, 746 A.2d at 372 (stating that as fact-finder, the Planning Board "is allowed to weigh the evidence and make a decision based upon its perception of the evidence.") Moreover, even if the Board had accepted the evidence as to a decrease in value, it could have found that a five to fifteen percent decrease in property value was not a significant negative impact.

[¶ 15] Pursuant to section 3(1)(a), the Board considered the size of the tower compared with surrounding uses. They inquired into whether the tower needed to be 1667 feet tall. WMTW explained that the tower needed to be 1667 feet tall because the height of the tower correlated to

the strength of the signal.[6]

[¶ 16] The Board heard testimony concerning the nuisance factors it was required to consider pursuant to section 3(1)(c). The evidence demonstrated that from 1000 feet away the tower would sound like the rustling of leaves; that the sound level would decrease further away from the tower; and that human hearing is relatively insensitive to the low frequencies of sound created by the tower. The testimony indicated that the lighting used on the tower would be FAA compliant and a state-of-the-art dual lighting system that minimizes glare by confining the light from the strobes and the beacon "to the narrowest possible area" above and below the horizon. The closer a residence is to the tower, the less visible the lights will be, and the homes will be 100 feet below the lowest level of lights on the tower. The evidence before the Board demonstrated that the radio frequency emissions from the tower did not pose a risk of exposure to high levels of radio frequency because the emissions would be less than one percent of the maximum permitted by the FCC.[7]

[¶ 17] The Planning Board also was offered evidence regarding WMTW's compliance with section 3(1)(e) regarding the degree to which the design elements mitigate the adverse impact upon neighboring properties. First, WMTW presented testimony that the entire tower complex, including the parking, control building and security fencing, would only utilize less than two acres of the 322 acre plot of land WMTW owned. WMTW also presented two photographs of simulated views of the tower from different locations in the town and beyond the town limits. When the Board discussed this criteria, it noted the testimony stating that the tower was designed to fall within the limits of WMTW's land; that it would be impossible to build a fence to mask the tower; and that a majority of the 322 acres would be used for hunting and hiking.

[¶ 18] Adelman also challenges the Board's conclusion regarding the tower's effect on the natural characteristics of the land. Section 3(3) of the ordinance states "the natural characteristics of the site, including topography, drainage, and relationship to ground and surface waters and flood plains, shall not be such that the proposed use when placed on the site will cause undue harm to the environment or to neighboring properties." The Board heard testimony from WMTW's engineering and planning consultant that the soil on the land of the proposed tower was workable for the project type; that the site had no wetlands on it; and that WMTW would incorporate erosion control provisions, including sedimentation barriers and drainage control devices, to minimize any environmental impact.

[¶ 19] When considering the conditional use application, the Board discussed every criteria required by the Land Use Ordinance. Substantial evidence supported the Planning Board's finding that WMTW established to the satisfaction of the Planning Board that the Tower plan met the necessary criteria for the conditional use permit. Thus, the court did not err in denying Adelman's Rule 80B appeal.

6. The appellants do not challenge the Board's findings regarding sections 3(1)(b) or 3(1)(d). We, therefore, do not discuss the record evidence concerning these criteria.

7. Adelman also argues that the tower would cause excessive bird kill and that such bird kill would constitute a sufficient nuisance to reject the conditional use application. Evidence was presented regarding bird kill caused by other towers. This evidence does not require the Board to find that such a destruction of aviary life would constitute a nuisance to the surrounding property owners. See Sproul, ¶ 9, 746 A.2d at 372 (stating that Planning Board must weigh evidence and make its own determination as to credibility). The tower will be set on 322 acres of land. Moreover, the ordinance does not require the Board to consider the protection of wildlife in its consideration of the conditional use application.

## IV. THE COMPREHENSIVE LAND USE PLAN

[¶ 20] Adelman further argues that the amendments to Baldwin's Land Use Ordinance that added communications towers as a conditional use in the highlands and rural areas are inconsistent with Baldwin's Comprehensive Plan. The Town and WMTW both assert that the court properly granted a summary judgment because the amendments to the ordinance are consistent with the comprehensive plan.

[¶ 21] We review the grant of a summary judgment for errors of law and independently examine the record to determine if a genuine issue of material fact exists. *See Nevin v. Union Trust Company,* 1999 ME 47, ¶ 5, 726 A.2d 694, 696. We view the evidence in "a light most favorable to the party against whom the judgment has been granted." *Id.*

[¶ 22] Section 4352(2) of Title 30–A requires all zoning ordinances to be consistent with the comprehensive plan adopted by the town's legislative body. *See* 30–A M.R.S.A. § 4352(2) (1996). Adelman bears the burden of proving that the communications tower amendments are inconsistent with Baldwin's Comprehensive Plan. *See Vella v. Town of Camden,* 677 A.2d 1051, 1053 (Me.1996). We review the record to determine whether the Town's legislative body (in this case the town meeting) could have found the amendments to the Land Use Ordinance to be in basic harmony with the comprehensive plan. *See id.* We will not substitute our judgment for that of the legislative body. *See id.*

[¶ 23] Adelman does not carry his burden of proving that the ordinance is inconsistent with the comprehensive plan. To assert the inconsistency between the amendments and the comprehensive plan, Adelman relies on four sections of the comprehensive plan stating (1) that development *should* be restricted in the highlands where elevations of 700–feet sustain slopes of 25%; (2) that the use of the highlands *should* be primarily for natural resources and very low density residential uses; (3) that 74% of the residents think the town *should* acquire land to protect scenic beauty or environmental importance; and (4) that the rural areas are intended to preserve Baldwin's character and to insure that any development will occur in a manner that preserves the aesthetics of the rural character of the community. These sections do not mandate action but merely suggest recommended conduct. Three of the four sections use the permissive term *should,* but none of sections use mandatory language such as *must* or *shall.* Thus, these sections do not prohibit the construction of a communications tower.

[¶ 24] Additionally, Adelman does not consider other sections of the comprehensive plan which may be interpreted to encourage the development of the communications tower. These sections state (1) that the comprehensive plan aims to serve the needs of all the townspeople while minimally restricting the rights of landowners; (2) that the Town must have a clear and compelling reason to limit the property rights of landowners; (3) that the plan should encourage new commercial, service, and light industrial uses in certain areas "to diversify the tax base and promote local job opportunities," and (4) to "identify and seek to preserve significant parcels of land by landowners' voluntary actions to help maintain Baldwin's rural character." The legislative body adopting the tower amendments could have construed the amendments to be in basic harmony with the comprehensive plan because by encouraging development of communications towers, the Town diversifies its tax base; increases local job opportunities; addresses the needs of all the townspeople; and protects the rural community by preserving 320 acres of undeveloped land for hiking and hunting. *See Vella,* 677 A.2d at 1053 (stating that the Court will not substitute its judgment for that of the legislative body drafting the amendments). The rec-

ord supports a conclusion that the Land Use Ordinance amendments are consistent with Baldwin's Comprehensive Plan; there are no genuine issues of material fact and the court did not err as a matter of law. *See Nevin*, ¶ 5, 726 A.2d. at 696. We, therefore, affirm the Superior Court's grant of a summary judgment.

The entry is:

Judgment affirmed.