STATE OF MAINE                          SUPERIOR COURT
LINCOLN, ss                             CIVIL ACTION
                                        DOCKET NO. AP-04-011

                                        UIV~ NM~ 1/17/06

STETSON HOUSE LLC and
OLD SHIPYARD LLC,

        Petitioners

        v.                              DECISION AND ORDER

THE INHABITANTS OF THE
TOWN OF NEWCASTLE and
NEWCASTLE SHORES, INC.,

        Respondents

        On July 15, 2004, the Town of Newcastle Planning Board (PB) granted site plan

and subdivision approval to Newcastle Shores, Inc. (NS) to construct a five-unit

residential condominium and dock facility. R. 10, 14, 32, 33. On October 13, 2004, the

Town of Newcastle Board of Appeals affirmed the PB's decision. See R. D. Stetson

House LLC and Old Shipyard LLC (SH/OS) appeal these decisions. See R. K. The

court reviews directly the decision of the PB to determine whether the PB abused its

discretion, committed errors of law, or made findings not supported by substantial

evidence. See Gensheimer v. Town of Phippsburg, 2005 ME 22, ¶¶ 7, 16, 868 A.2d 161,

163, 166. The burden of persuasion rests with SH/OS. See Mack v. Mun. Officers of the

Town of Cape Elizabeth, 463 A.2d 717, 720 (Me. 1983). In order to vacate the PB's

findings, SH/OS must show that there is no competent evidence to support the PB's

conclusions. See Adelman v. Town of Baldwin, 2000 ME 91, ¶ 12, 750 A.2d 577, 583.

1

For the following reasons, the decisions of the PB and Town of Newcastle Board of Appeals are affirmed.[1]

COUNT I

## Normal High Water Line

"Normal high water line" is defined by the Mandatory Shoreland Zoning Act and the Town of Newcastle Land Use Ordinance (NLUO). See 38 M.R.S.A. § 436-A(9) (2005); NLUO, ch. II at 17. The PB concluded that the high water mark shown on the survey met the requirements of the ordinance. See 7/1/04 Tr. at 9-27. The PB's interpretation of the ordinance was reasonable and is supported by substantial evidence. See Drawings 1 & 2 (1811 high water mark); Drawings 8 & 9, based on a Boundary Survey by Maine Coast Surveying dated 1/8/04 (normal high water line); Adelman, 2000 ME 91, ¶ 12, 750 A.2d at 583.

## Work Performed on Wharf[2]

The PB must review new wharves but not repairs to existing wharves. See NLUO, ch. XI at 109-110. Initially, the Town of Newcastle Code Enforcement Officer (CEO) issued a permit for rebuilding a stone wall around an existing wharf but later determined this permit was not necessary. See 7/15/04 Tr. at 6, 9; 7/1/04 Tr. at 46-47. Instead, the CEO determined that NS needed a permit from the Department of Environmental Protection. See R. B-18. Plans and photographs of the property revealed that a filled area with a retaining wall existed at the time of the application. See, e.g., Preliminary Subdivision Plan, Site Plan & Landscape Plan, C-1; Drawing 2; R. B-1. The

---

[1] The petitioners filed a 40-page brief and a 27-page reply brief. Respondent Town of Newcastle filed a 27-page brief with an addendum. The requirements of M.R. Civ. P. 7(f), and the reasons for those requirements, apply to a M.R. Civ. P. 80B review.

[2] This is a retaining wall with fill.

PB's conclusion that NS did not build a new wharf is supported by substantial evidence in the record. See 7/15/04 Tr. at 109-110.

### Lot Size Calculation

The PB determined that the entire parcel, including the repaired wharf, was located above the high water mark and that NS met the requirements for minimum lot size of 30,000 square feet for a parcel in the Shoreland Zone. See R. 33 at 11; 7/1/04 Tr. at 27-28. The record reveals that the PB determined that chapter V, § F(10) of the NLUO applied only to cluster developments. See 6/17/04 Tr. at 51-52. The PB's conclusions are supported by substantial evidence and the construction of the Town's ordinance is reasonable. See Peregrine Developers, LLC v. Town of Orono, 2004 ME 95, ¶ 9, 854 A.2d 216, 219.

### Lot Width Determination

The PB's application of the shoreland standards for lot width to the NS plan was discussed at the 7/1/04 hearing. See 7/1/04 Tr. at 35-46; NLUO, ch. XI, § J(1)(f); R. 33 at 12. The PB declined to measure the property as requested by SH/OS. See 7/1/04 Tr. at 44-45. The PB's construction of its ordinance was reasonable. The PB's conclusion that the width of the NS parcel met the NLUO requirements is supported by substantial evidence and is consistent with the requirements of the ordinance.

### Minimum Lot Size

In determining the required lot size for the NS project, the PB applied the amendments to the standards for the Village Waterfront District, where the NS parcel is located. See NLUO, ch. X, Proposed Changes to Maritime District Section of NLUO, § Ha(2), passed 12/1/03 (addendum to Town of Newcastle Mem.). The PB determined that based on the survey in the record, the minimum lot size of 30,000 square feet was met. See R. 33 at 11. Based on the language of the ordinance, the PB determined that the

lot size did not have to be doubled because NS intended two uses for the parcel. See NLUO, ch. X, § J(1)(g) (Proposed Changes to Maritime District Section of NLUO). That conclusion is supported by substantial evidence in the record and is consistent with the requirements of the ordinance.

Easement

The Declaration of Condominium for NS provides that the condominium owners would grant an easement to a third party to operate the marina. See R. 21 at 7; 7/15/04 Tr. at 80-100. Additional language presented at the 7/15/04 hearing provided that the owners would have the right to enforce the maintenance agreement with the marina operator. See 7/15/04 Tr. at 81[3]; NLUO, ch. V, § F(15). The easement does not confer possession or create a separate unit. The PB concluded that the Declaration language complied with the maintenance requirements of the NLUO. See 7/15/04 Tr. at 97-100. That conclusion is supported by substantial evidence in the record and is consistent with the requirements of the ordinance.

Shoreland Zone Setback Requirements

As discussed above, the PB applied the normal high water mark for the property found in the survey filed with the NS application. Based on that mark, the PB concluded that the condominium building met the 75-foot setback requirement found in the NLUO. See NLUO, ch. XI, § J(2)(a) (Proposed Changes to Maritime District Section of NLUO).

The PB concluded that the parking area also met the setback requirements. See 7/1/04 Tr. at 64. The PB determined that the driveway and roads were also appropriate pursuant to the NLUO. See 7/1/04 Tr. at 66-80; R. 33, § IV(K); NLUO, ch.

---

[3] The court could not find this document in the record. It appears that Mr. Pooley read the language of "Coordination with Condominium" into the record. See 7/15/04 Tr. at 81.

4

XII, § J(8)(a)(2) & (c). These conclusions are supported by substantial evidence in the record and are consistent with the requirements of the ordinance.

### Height Limitations/Number of Stories

The PB applied the method for measuring the height of a building the PB found in Shoreland Zoning Ordinance, Village Waterfront District. See 7/1/04 Tr. at 51-56; NLUO, ch. II, at 14 & ch. X(Ha)(2)(f). The PB determined that the NS application complied with the height requirements. See R. 33, § IV(H). The PB further determined that because most of the garage is located at the basement level, the NS application met the requirements for the number of stories. See 7/1/04 Tr. at 53-54. The PB's conclusions are supported by substantial evidence in the record and are consistent with the requirements of the ordinance.

### Lot Coverage

The NLUO provides that the "total area of all structures, parking lots, and other non-vegetated surfaces" may not exceed 70% of the lot. See NLUO, ch. XI, § J(2)(d). The engineer for NS considered everything that would be landscaped with "trees or some sort of vegetate coverage, including grass" as not included in lot coverage. See 7/1/04 Tr. at 57-58. NS considered part of the wharf as included in the vegetation section and the PB agreed. Se id. at 58-62. The engineer's calculations provide that 45% of the lot is vegetation. See id. at 7. Relying on the NS engineer's calculations, the PB concluded that the NS application met the requirements for lot coverage. See R. 33, § IV(I). The PB's conclusions are supported by substantial evidence in the record and are consistent with the requirements of the ordinance.

### Functional Water Dependent Use

The PB determined that NS's proposed structure on the wharf would be used for storage of items used by boaters. See 7/1/04 Tr. at 62. The PB concluded that the uses

required access to the water and the shed was either a functionally water-dependent use, which does not have to meet setback requirements, or a waterfront dock facility. See R. 33, § IV(J); NLUO, ch. II at 13; ch. XI(J)(2)(a)(1) & (J)(3)(e). The PB's conclusions are supported by substantial evidence in the record and are consistent with the requirements of the ordinance.

COUNT II

The PB discussed the NS project with NS prior to the filing of the application, as permitted by the NLUO. See NLUO, ch. V, § B(3). The PB also recommended amendments to the NLUO, which were approved by the Town of Newcastle on 3/29/04. See R. Book B-3; 16. None of these actions deprived SH/OS of an impartial tribunal.

The record reflects that SH/OS received sufficient notice and were given the opportunity to be heard. See R. 23, 27, 30; NLUO, ch. V, § D(3); Cunningham v. Kittery Planning Bd., 400 A.2d 1070, 1078-79 (Me. 1979) (citation omitted); see also Crispin v. Town of Scarborough, 1999 ME 112, ¶¶ 17-27, 736 A.2d 241, 247-49 (zoning). The record is sufficient to permit appellate review. See, e.g., R. 8, 11, 12, 24, 27, 30, 32, 33; 6/17/04 Tr.; 7/1/04 Tr.; 7/15/04 Tr.; Glasser v. Town of Northport, 589 A.2d 1280, 1282 (Me. 1991).

The entry is

> The Decisions of the Town of Newcastle Planning Board and
> Board of Appeals are AFFIRMED.

Date: April 7, 2006

Nancy Mills
Justice, Superior Court

Petitioner: Michael E. Stern, Esquire
Respondent Town of Newcastle: Mark V. Franco, Esquire
Respondent Newcastle Shores: John A. Cunningham, Esquire

6