ENTERED OCT 2 9 2014

STATE OF MAINE

Sagadahoc, ss.

DAVID NORTON,

Plaintiff

v.

CITY OF BATH,

Defendant

SUPERIOR COURT

2/6/2014

AMH-SAG-02-06-14

Docket No. BATSC-AP-13-07

## DECISION AND JUDGMENT

Pursuant to M.R. Civ. P. 80B, Plaintiff David Norton appeals from the decision of the City of Bath, acting through the Bath Chief of Police and the Bath City Manager, to deny his application for a taxi operator's license. Oral argument was held February 4, 2014, with attorneys Whiting and Therriault presenting argument for Plaintiff and Defendant respectively.

Based on the entire record, the court denies the appeal for the reasons set forth in this Decision and Order.

## Background

On March 15, 2013 Plaintiff David Norton applied to the City of Bath Police Department for a taxi operator's license. Michael Field, the Chief of Police, denied the application after reviewing police reports of certain incidents involving Mr. Norton. Mr. Field determined that several of Mr. Norton's neighbors had complained to the police about Mr. Norton's bizarre and antagonistic behavior. One such complaint asserted that Mr. Norton had pointed his finger at someone and popped a paper bag to imitate shooting a gun. Mr. Field applied a provision of the city ordinances ("taxi ordinance"), which states: "The Chief of Police, or his designee, shall be satisfied that the applicant is

of sufficient moral character so as not to represent a danger to passengers or the general public." Bath, Me., Code § 5-47 (Sept. 3, 2008). Mr. Field concluded, based on the police reports, that he was not satisfied that Mr. Norton did not represent a danger to passengers or the general public.

Mr. Norton appealed the decision to the City Manager, William Giroux, and a hearing was held on May 31, 2013. At the hearing, Mr. Norton explained each of the incidents in the police reports. Mr. Norton did not recall the incident of him imitating a gun with his finger and popping a paper bag. (Tr. 43.)[1] Mr. Field also commented that every time the police responded to complaints involving Mr. Norton, he became angry and aggressive towards the officers.

Mr. Giroux accepted into evidence a letter from Mr. Norton's psychologist, Dr. Richard Parker, and a letter from another psychologist, Dr. Mitchell Pulver, who examined Mr. Norton solely for the taxi license application. (Pl.'s Exs. 3-5.) Both doctors opined that Mr. Norton would not present a danger to passengers or the general public if he were allowed to operate a taxi. Mr. Giroux did not find the reports helpful because they did not explain why he had been seeing a psychologist and did not address any of the problems mentioned in the police reports. (City's Decision, page 2.) Mr. Giroux also expressed his concern that Mr. Norton stated on his initial application that his history of mental health problems was limited to one isolated incident in 2003 when Mr. Norton has been in psychotherapy over the last four years. *Id.*

Finally, Mr. Giroux based his decision on Mr. Norton's own self-assessment that he is "eccentric," "easily misunderstood," and that he has a temper. *Id.* Mr. Giroux found that Mr. Norton exhibited "a wide swing of emotions and a barely contained anger with

---

[1] The reference is to a verbatim transcript of the appeal hearing convened by the City Manager that has been made part of the record on appeal.

the Police Chief" throughout the hearing. *Id.* Mr. Giroux found these descriptions and observations to be consistent with the behavior described in the police reports.

Although Mr. Norton maintained throughout the hearing that he is not violent and does not pose a threat, Mr. Giroux was concerned about Mr. Norton's "ability to interact with the public without upsetting and endangering the customer." *Id.* Accordingly, he upheld Chief Field's decision in a letter to Mr. Norton on September 18, 2013. Mr. Norton filed this appeal on October 17, 2013.

## Analysis

### 1. Standard of Review

On review of an 80B appeal, the court "examine[s] the record before the administrative agency to determine if the agency exceeded the bounds of its discretion, committed errors of law, or made findings that are not supported by substantial evidence contained in the record before the administrative agency." *Quiland, Inc. v. Wells Sanitary Dist.*, 2006 ME 113, ¶ 15, 905 A.2d 806. "A party asserting error in an administrative agency's findings or determinations has the burden of demonstrating that error." *Id.* ¶ 16.

### 2. Statutory Construction

Mr. Norton first argues that the City of Bath lacked the authority to enact Section 5-47 of the City Code. He relies on the language of 30-A M.R.S. § 3009, which gives "municipal officers the exclusive authority to enact all traffic ordinances in the municipality" subject to certain limitations. 30-A M.R.S. § 3009(1) (2013). As relevant here, the statute states:

> The municipal officers may regulate or establish a licensing authority which may regulate rates of fare, routes and standing places of vehicles for hire, except where jurisdiction rests with the Public Utilities Commission and may require an owner or operator of a vehicle for hire to carry a liability insurance policy in

3

amount and form satisfactory to the licensing authority as a condition precedent to the granting of a license to operate.

30-A M.R.S. § 3009(1)(F). Mr. Norton argues that, because the statute explicitly gives the municipality these powers, it implicitly denies them the authority to regulate taxi operators in any manner not covered in this section.

Section 3001 of the Act provides rules of construction for interpreting a municipality's authority to enact ordinances:

> **1. Liberal construction.** This section, being necessary for the welfare of the municipalities and their inhabitants, shall be liberally construed to effect its purposes.
> **2. Presumption of authority.** There is a rebuttable presumption that any ordinance enacted under this section is a valid exercise of a municipality's home rule authority.
> **3. Standard of preemption.** The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law.

30-A M.R.S. § 3001. Thus, the City's taxi ordinance must be presumed to be valid and it should not be deemed preempted unless the ordinance would frustrate state law. Mr. Norton does not identify any state law that conflicts with the City of Bath's ordinance.

Furthermore, Mr. Norton's argument mistakes the purpose behind Section 3009. That section is intended to reserve certain powers to the municipal *officers* in a town. Some towns in Maine enact ordinances through town meetings. *See* 30-A M.R.S. § 3002 (providing the procedure to enact ordinances through town meetings). Section 3009 is not a limitation on the authority of the municipality generally; it allows a town to enact certain types of ordinances through its municipal officers rather than by means of the town meeting.[2] Thus, Section 3009 does not prevent the City of Bath from enacting additional regulations for taxi licenses.

---

[2] This interpretation is supported by the legislative history behind the original enactment of the home-rule statute. L.D. 506, Statement of Fact, § 16, at 39 (113th Legis. 1987)

4

### 3. The Moral Character Standard

Mr. Norton next argues that the taxi ordinance is unconstitutional because it gives the Police Chief arbitrary and capricious power to deny taxi licenses. Mr. Norton recognizes that he has no protected property interest but nevertheless advances his claim as an equal protection challenge. "If some may and some may not enjoy privileges provided by the State, the decision to grant or withhold cannot be made in an arbitrary manner." *Portland Pipe Line Corp. v. Envtl. Improvement Comm'n*, 307 A.2d 1, 25 (Me. 1973). Mr. Norton contends that, by not providing any standards to judge a person's "moral character," the ordinance places unbridled discretion in the police chief to issue a taxi license.

Mr. Norton's argument only focuses on the first half of the ordinance standard, which in its entirety states: "The Chief of Police, or his designee, shall be satisfied that the applicant is of sufficient moral character *so as not to represent a danger* to passengers or the general public." Bath, Me., Code § 5-47 (Sept. 3, 2008) (emphasis added).

Moreover, there are many other professions that require an applicant to demonstrate good moral character before they can be licensed. *See* 4 M.R.S. § 805-A(2)(A) (lawyers); 32 M.R.S. § 9405 (private security guards); 32 M.R.S. § 8105 (private investigators); 30-A M.R.S. § 3812 (innkeepers). The Law Court has specifically upheld the denial of a victualer's license because the applicant could not demonstrate "good moral character." *Chequinn Corp. v. Mullen*, 193 A.2d 432, 435-36 (Me. 1963). Bath's requirement is linked to the safety of taxi passengers and the general public; it does not bestow arbitrary and capricious power in the police chief.

5

### 4. Danger to the Public

At oral argument, Mr. Norton's counsel contended that the "danger to passengers or the general public" clause in the ordinance means that an applicant cannot be denied a license unless the person presents a threat of physical harm to passengers or the public. The record in this case admittedly does not include any evidence that Mr. Norton has actually assaulted or caused physical harm to anyone, as opposed to engaging in angry, threatening and intimidating behavior on a variety of occasions.

The court disagrees. The term "danger" in and of itself means threat, risk or potential for harm, not actual harm. The ordinance does not say that there must be evidence of assaultive behavior or other physical harm. Moreover, given the level of a taxi driver's interaction with visitors, tourists and members of the public generally, the City's interpretation of the ordinance, and specifically the term "danger to passengers or the general public" to encompass angry, threatening or intimidating behavior was reasonable. While Mr. Norton might not actually be violent, passengers could easily misinterpret his temper and erratic behavior as hostility and feel threatened. A dangerous situation could arise if passengers in Mr. Norton's cab felt threatened by Mr. Norton.

### 5. Substantial Evidence

Mr. Norton next argues that the city manager's decision denying him a taxi license is not supported by substantial evidence in the record. "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion; the possibility of drawing two inconsistent conclusions does not render the evidence insubstantial." *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 12, 750 A.2d 577.

6

Mr. Norton argues that there is no evidence in the record that he would endanger passengers or the public if he were granted a taxi license.

City Manager Giroux based his decision on several different findings. First, he credited the police chief's testimony about Mr. Norton's repeated verbal abuse of various police officers responding to complaints against Mr. Norton. Second, Mr. Giroux noted the incident where Mr. Norton mimicked a gun and found it troubling that Mr. Norton did not recall that happening. Third, Mr. Giroux relied on Mr. Norton's own self-assessment that he has a temper and is easily misunderstood. Mr. Giroux also found Mr. Norton poorly masked his anger at the police chief throughout the hearing.

Mr. Giroux also had a valid basis not to be satisfied with Mr. Norton's disclosures about his mental health condition. Mr. Norton submitted reports from two doctors, but Mr. Giroux found the reports unhelpful because they did not address any of the behavioral concerns already mentioned, nor did they explain why Mr. Norton was in psychotherapy. Importantly, nothing in the City's decision indicates that Mr. Giroux or Chief Field viewed Mr. Norton's mental health diagnosis or history as a disqualifying factor in and of itself. Nothing in the ordinance language would allow denial of a tax permit based on a history of mental illness alone.

The record contains substantial evidence to support Mr. Giroux's decision.

6. <u>Bias</u>

Finally, Mr. Norton argues that both Police Chief Field and City Manager Giroux were biased against him. A mere allegation of bias is insufficient to overturn an administrative decision. *See Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990) (denying motion for trial of the facts based on mere allegation of bias alone). Mr.

7

Norton offers no evidence to support his claim of bias. There is nothing in the decisions themselves that reveal any bias from Mr. Field or Mr. Giroux. Accordingly, Mr. Norton's bias claim is without merit.

## Conclusion

Based on the foregoing analysis, the court concludes that the appeal of Plaintiff David Norton should not granted, and that the City's denial of his application should be affirmed. It is hereby ORDERED AND ADJUDGED:

1. The appeal of Plaintiff David Norton is denied. The Defendant City's denial of Plaintiff's application for a taxi operator license is affirmed.

2. Judgment is hereby awarded to the Defendant City of Bath against Plaintiff David Norton, together with costs based on the City being the prevailing party.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Decision and Judgment by reference in the docket.

Dated February 6, 2014

_____
A. M. Horton
Justice, Superior Court

8

2/4/2014

Date Filed: 10/17/13          Sagadahoc County          Docket No. AP-13-07
Action:  80B Appeal

David Norton                                              City of Bath

                              vs.

Plaintiff's Attorney                                     Defendant's Attorneys

Stephen C Whiting, Esq                                   Roger R. Therriault, Esq
Suite 207                                                Michael E. Therriault, Esq
75 Pearl Street                                          48 Front Street
Portland, Maine 04101                                    Bath, Maine 04530