STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-480

FRIENDS OF THE MOTHERHOUSE,
et al.,

      Plaintiffs

v.

CITY OF PORTLAND,

      Defendant

and

SEA COAST AT BAXTER WOODS
ASSOCIATES, LLC, et al.,

      Intervenors.

ORDER

STATE OF MAINE
Cumberland ss Clerk's Office

APR 20 2016

RECEIVED

Before the court is a motion for summary judgment brought by Intervenors Motherhouse Associates LP and Sea Coast at Baxter Woods Associates, LLC and joined by defendant City of Portland.

The plaintiffs in this action are a non-profit corporation, Friends of the Motherhouse, and two individuals, Raymond Foote and Barbara Weed. They allege that recent amendments to the City of Portland's zoning ordinance and zoning map are inconsistent with the City's comprehensive plan and that the rezoning failed to comply with applicable procedural requirements in the comprehensive plan. They seek a declaratory judgment that the amendments are unlawful.

The intervenors are developers whose proposed project depends upon approvals granted by the City under the zoning amendments. The intervenors' motion for summary judgment

asserts that the amendments are not inconsistent with the comprehensive plan and are otherwise lawful.

## Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

In this case plaintiffs have admitted all of the factual assertions in the intervenors' statement of material facts. Although plaintiffs also submitted a statement of additional material facts, that statement consists almost entirely of legal arguments that the rezoning is inconsistent with plaintiffs' interpretation of the comprehensive plan.[1] The court concludes that there are no disputed issues of material fact.

After filing their opposition to the motion for summary judgment and essentially agreeing that there were no disputed issues of fact, plaintiffs filed a Rule 56(f) motion to stay any decision on the motion until they had the opportunity to conduct discovery. Because plaintiffs did not

---

[1] Indeed, plaintiffs argue that based on the undisputed record, summary judgment should be granted in their favor pursuant to the last sentence of M.R.Civ.P. 56(c). *See* Plaintiffs' Opposition to Intervenors' Motion for Summary Judgment dated December 28, 2015 at 1, 18.

2

demonstrate that the discovery they sought was in any way needed to discover facts essential to their opposition to summary judgment, their Rule 56(f) motion was denied in an order dated March 8, 2016.

## Factual Background

In June 2014 Sea Coast Healthcare Inc. entered into an agreement with St. Joseph's Convent and Hospital to purchase a 17.5 acre property located on Stevens Avenue in Portland. The property includes the vacant St. Joseph's convent, known as the Motherhouse, as well as Catherine McAuley High School, St. Catherine's residence hall, surrounding grounds, and playing fields. Intervenors' SMF ¶¶ 1, 3. At that time the property was in an R-5 zone.

The purchase agreement was assigned to Intervenor Sea Coast at Baxter Woods Associates, LLC (Sea Coast), which proposes to develop the property by converting the vacant Motherhouse into a multifamily dwelling of 88 affordable and market rate senior housing units and creating a retirement community or congregate care facility consisting of additional dwelling units and assisted living facilities. Sea Coast will offer Catherine McAuley High School a 25 year lease and St. Catherine's Hall will remain as housing for retired Sisters of Mercy. Intervenors' SMF ¶¶ 2, 4-5.

In March 2015 Sea Coast filed an application for a zoning amendment concerning the property. The original application sought to rezone the entire property from R-5 to R-6A. However, during the course of review by the Planning Board, Sea Coast revised its application to reduce the size of the area to be rezoned from 17.5 to 13.5 acres, excluding Catherine McAuley High School and St. Catherine's Hall and certain associated land areas, which would remain in the R-5 zone. Sea Coast also revised its proposal by switching the proposed rezoning of the

3

remaining 13.5 acre parcel to R-5A, which is lower density than R-6A. Intervenors' SMF ¶¶ 8, 10.

In May 2015, after notice and public hearing, the Planning Board voted 4-0 to recommend that the City Council approve the proposed rezoning as revised. The proposed revisions included both amendments to the text of the zoning code and to the zoning map. Intervenors' SMF ¶ 12.

The City Council held a public hearing on the proposed rezoning and voted to adopt the proposed text amendments on June 15, 2015. At that time it tabled the proposed map amendments to its next meeting. Intervenors' SMF ¶¶ 16, 18.

Before that meeting Sea Coast suggested that its proposal be revised to rezone only 7.51 acres to R-5A, increasing to 9.53 acres the area that would remain as originally zoned in R-5.[2] This had the effect of reducing the maximum number of dwelling units potentially allowed under the proposed rezoning from 334 to 249, including the 88 units in the converted Motherhouse. Intervenors' SMF ¶¶ 19-21. On July 6, 2015 the City Council unanimously approved the proposed map amendment as revised, rezoning 7.51 acres to R-5A. Intervenors' SMF ¶ 22.

On August 11, 2015 the Planning Board approved Sea Coast's application to approve a four lot subdivision of the property, along with subdivision approval for a multifamily dwelling consisting of 88 senior housing units (66 affordable and 22 market rate) in the Motherhouse. No appeal from the Planning Board's approvals was filed. Intervenors' SMF ¶¶ 23-25.

---

[2] The record suggests that this revision was proposed "to address neighbor and Councilor concerns about density as expressed at the June 15, 2015 hearing." Exhibit J-1 at 68.

4

Consistency with Comprehensive Plan

The Law Court has stated that review of rezoning decisions by a city council must respect that "zoning is a legislative act" and must give deference to the legislative body. *Remmel v. City of Portland,* 2014 ME 114 ¶ 12, 102 A.3d 1168, quoting *Golder v. City of Saco,* 2012 ME 76 ¶ 11, 45 A.3d 697. By statute, zoning decisions and rezoning decisions must be "pursuant to and consistent with a comprehensive plan adopted by the municipal legislative body." 30-A M.R.S. § 4352(2). *See also* 30-A M.R.S. § 4314(3). In considering whether a rezoning action is consistent with a city's comprehensive plan, the court must determine whether the City Council could have determined from the evidence before it that the rezoning was "in basic harmony" with the comprehensive plan. *Remmel,* 2014 ME 114 ¶ 13, quoting *Adelman v. Town of Baldwin,* 2000 ME 91 ¶ 22, 750 A.2d 577, and *LaBonta v. City of Waterville,* 528 A.2d 1262, 1265 (Me. 1987). The party challenging a zoning amendment has the burden of proving that the amendment is inconsistent with the comprehensive plan. *Remmel,* 2014 ME 114 ¶ 13; *Golder,* 2012 ME 76 ¶ 11.

The Law Court has also ruled that a rezoning action will be "in basic harmony" with the comprehensive plan

> so long as it strikes a reasonable balance among the municipality's various zoning goals or overlaps considerably with the plan . . . In addition, a comprehensive plan is considered as a whole; a municipality may conclude that a rezoning action is consistent with a comprehensive plan when it is in harmony with some provisions of the plan, even if the action appears inconsistent with other provisions of the plan.

*Remmel,* 2014 ME 114 ¶ 14 (quotations and citations omitted).

The City's Comprehensive Plan is contained in the record as Exhibits L-2 and L-3 to the Intervenors' motion for summary judgment. The record before the City Council is found at

5

Exhibit J-1, and the pertinent sections of the Zoning Code, showing both the prior language and the amendments that were adopted, is contained in Exhibit J-2. The Zoning map as amended is included as Exhibit J-3. The record before the City Council contains an analysis by the Planning Board of the proposed changes, Exhibit J-1 at 70-98, including the Planning Board's finding that the proposed text amendments were consistent with the Comprehensive Plan. Exhibit J-1 at 89-98.

Portland's Comprehensive Plan adopts state goals of (1) encouraging orderly growth and development, while making efficient uses of public services and preventing development sprawl; (2) encouraging and promoting affordable housing; and (3) preserving state historic resources. *See* 30-A M.R.S. §§ 4312(3)(A), (D), (I); Exhibit L-2 at 21, 43, 71. In particular, the Comprehensive Plan emphasizes the shortage of housing in Portland (Exhibit L-2 at H-1) and the particular shortage of affordable housing (Exhibit L-2 at H-13).

The "Housing Initiatives" section in the Comprehensive Plan begins from the premise that Portland seeks to grow and that appropriate growth is needed to sustain Portland as a healthy city. Exhibit L-3 at 3. Among the initiatives recommended are three that are pertinent to the zoning amendments at issue in this case:

- Reuse of existing non-residential buildings for housing;

- New senior citizen housing; and

- Creation of affordable housing units.

Exhibit L-3 at 4.

The Housing Initiatives section of the Comprehensive Plan includes a chart setting forth specific implementation strategies. One of those is to "update zoning to encourage neighborhood livability with higher density multi-family & innovative mixed use projects that are along major

transportation routes . . . ." Exhibit L-3 at 6 (emphasis added). Other implementation strategies listed are to "increase rental and homeownership options for senior citizens" and to "find productive uses for vacant and underutilized lots." *Id.*

In keeping with the requirements of state law, Portland's Comprehensive Plan designates certain areas as growth areas. Exhibit L-3 at 54; 30-A M.R.S. § 4326(3-A)(A). Both R-5 zones (the designation of the entire St. Joseph's convent property before rezoning) and R-5A zones (the designation of the 7.51 acres to be developed by Intervenors after rezoning) are designated as growth areas. Exhibit L-3 at 59. In addition, Stevens Avenue, which is classified as a "minor arterial" under the Federal Street Classification categories (Exhibit J-1 at 73),[3] is one of the main transportation routes in the area.

The court concludes that the zoning amendments and the map rezoning at issue in this case are consistent with the Comprehensive Plan's provisions to encourage growth by providing additional housing, including affordable housing and housing for senior citizens, by converting and reusing the existing Motherhouse and by developing up to 161 units on currently underutilized property, while at the same time leaving the remaining 9.5 acres zoned as R-5 with existing uses (Catherine McAuley and St. Catherine's Hall) unaffected.

Plaintiffs' counterargument is solely based on the premise that the textual changes affecting R-5A zoning districts and the zoning map amendments applicable to the Intervenors' development of the St. Joseph's convent site are inconsistent with what they allege is a requirement in the Comprehensive Plan that any rezoning to R-5A be accomplished through conditional or contract zoning.[4] Because the amendments made to the Zoning Code allow

---

[3] Other Portland streets classified as "Minor Arterials" are Warren Avenue and Washington Avenue. Forest Avenue, Brighton Avenue and outer Congress Street are classified as "Principal Arterials." *Id.*

[4] Statutory definitions of "conditional zoning" and "contract zoning" are contained in 30-A M.R.S. §§ 4301(4) and 4301(5).

7

rezoning to R-5A without conditional or contract zoning, plaintiffs argue that the amendments are inconsistent with the Comprehensive Plan and that the rezoning is procedurally invalid because it was accomplished by a procedure that did not comply with the Comprehensive Plan.[5]

The short answer to plaintiffs' arguments is that Portland's Comprehensive Plan does not require that any rezoning to R-5A be accomplished only through conditional or contract zoning. The section in the Comprehensive Plan that addresses R-5A Residential Districts states in its entirety that the purpose of R-5A zoning is

> To provide for moderate-density residential development in off-peninsula sections that can provide a unique residential living experience with a high degree of natural site amenities; and to provide areas in the city in the general proximity of the peninsula that have the capability for adequate municipal services, including traffic corridors with adequate traffic capacity, that can appropriately accommodate a more intensive use of land than other lower-density zoned land and be compatible with surrounding neighborhoods; and to increase affordable housing opportunities in off-peninsula locations by providing a moderate-density zone.
>
> The permitted residential uses in the R-5a zone are very similar to those in the R-5 zone, except that multiplexes are not allowed. The other significant difference is that PRUDs [Planned Residential Unit Developments[6]] may be developed at a higher density. PRUDs in an R-5a zone require a minimum net land area of 1,600 square feet per unit compared to 3,000 square feet in the R-5 zone. The R-5a is applied through rezoning when a site and development proposal meets the intent of this zoning classification. This would be a tool for encouraging more housing in specific neighborhood locations as determined through the city's neighborhood-based planning programs and recommended in Housing: Sustaining Portland's Future. Potential text amendments will be considered to update the residential zones in conformance with the recommendations in Housing: Sustaining Portland's Future.

---

[5] Plaintiffs apparently also disapprove of certain of the other text amendments made to the zoning code but never explain how they contend those other changes are inconsistent with the Comprehensive Plan.

[6] A Planned Residential Unit Development (PRUD) is described as "horizontally or vertically attached dwelling units or a series of such dwelling units." Zoning Code § 14-127(a)(2); Exhibit J-2 at 3.

8

Exhibit L-3 at 64.

Before the amendments challenged in this action, the zoning code provided that planned residential unit developments (PRUDs) "shall be implemented through conditional or contract zoning . . . for specific sites and proposed development meeting the overall requirements specified herein." That language was deleted in the new amendments. Zoning Code § 14.127(a)(2); Exhibit J-2 at 3. Plaintiffs' theory appears to be that since the Comprehensive Plan states that in an R-5A zone PRUDs may be developed at a higher density, and since the zoning code at that time required that PRUDs be implemented through conditional or contract zoning, the Comprehensive Plan mandates that rezoning to R-5A can only be accomplished through conditional or contract zoning.

Nowhere in the section of the Comprehensive Plan addressing R-5A zoning is there any statement that R-5A zoning can only be implemented through conditional or contract zoning. Just because the Comprehensive Plan mentions an existing zoning tool – the use of PRUDs to allow higher density development – and just because PRUDs at that time were to be implemented through conditional and contract zoning does not convert the Comprehensive Plan into a straitjacket that only allows increased density through the use of PRUDs and conditional or contract zoning. PRUDs, conditional zoning, and contract zoning are all zoning tools, and the Comprehensive Plan does not foreclose the use of other tools to allow higher density development in R-5A zones.

Thus, although the Planning Board's analysis noted that the R-5A zone had been envisaged as an overlay zone in which multifamily development would be implemented through conditional rezoning using PRUDs (Exhibit J-1 at 84), the Planning Board ultimately concluded

9

that the text and map amendments proposed were consistent with the Comprehensive Plan. Exhibit J-1 at 98.

The crucial language in the Comprehensive Plan relating to R-5A zones is that "[t]he R-5a is applied through rezoning when a site and development proposal meets the intent of this zoning classification." The intent of the zoning classification is set forth in the first paragraph of the R-5A description – to provide moderate density residential development in off-peninsula sections, to provide areas in the city that have the capability (including adequate traffic capacity) to appropriately accommodate a more intensive use of land, and to increase affordable housing opportunities. Exhibit L-3 at 64.

The section in the Comprehensive Plan addressing R-5A zoning expressly states that R-5A zoning is a tool to "encourage more housing." It also expressly contemplates that, contrary to plaintiffs' arguments, "text amendments will be considered to update the residential zones" in accordance with the recommendations contained in a report entitled Housing: Sustaining Portland's Future. Exhibit L-3 at 64 (emphasis added).

Excerpts from the Housing: Sustaining Portland's Future report are contained in the record, and the objectives listed in that report include:

• creation of housing with a range of services for the elderly, including assisted living and congregate care;

• encouraging higher density housing;

• encouraging housing generally for senior citizens; and

• encouraging affordable housing for seniors and others.

Exhibit L-4 at 29-32. The zoning code and map amendments challenged by plaintiffs are consistent with those objectives.

10

It also bears emphasis that under the zoning code as it existed prior to the amendments sought by Intervenors – and employing R-5A zoning with PRUDs (the zoning tool which plaintiffs contend was required) – the minimum lot area per dwelling unit would have been 1600 sq. feet and the minimum open space per dwelling unit would have been 200 sq. feet. These minimums remain unchanged under the zoning code as amended. Exhibit J-1 at 83.

For all the above reasons, the court concludes that the zoning code and map amendments at issue are "in basic harmony" with Portland's Comprehensive Plan, *Remmel,* 2014 ME 114 ¶ 13, and that the rezoning of 7.51 acres of the St. Joseph's convent site to R-5A did not have to be accomplished by conditional or contract zoning. Accordingly, Intervenors are entitled to summary judgment granting declaratory relief to that effect.

Having reached that result, the court does not need to reach the second issue raised by Intervenors on the pending motion –- that, even if the text and map amendments were not found to be consistent with the Comprehensive Plan, the Planning Board's August 15, 2015 subdivision approvals could not be overturned because plaintiffs did not file timely appeals from the Planning Board's actions. *See Sold Inc. v. Town of Gorham*, 2005 ME 24, 868 A.2d 172.

The entry shall be:

The motion for summary judgment by Intervenors Motherhouse Associates LP and Sea Coast at Baxter Woods Associates, LLC is granted. The court enters judgment declaring that the amendments to the Zoning Code and the rezoning challenged in this case are consistent with the City's Comprehensive Plan. Accordingly, plaintiffs' complaint is dismissed.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

11

Dated: April 19, 2016


_____
Thomas D. Warren
Justice, Superior Court

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-480

FRIENDS OF THE MOTHERHOUSE,
et al.,

Plaintiffs

v.                                                        ORDER

CITY OF PORTLAND,

Defendant

and

SEA COAST AT BAXTER WOODS
ASSOCIATES, LLC, et al.,

Intervenors.

STATE OF MAINE
Cumberland. ss, Clerk's Office

MAR 09 2016

RECEIVED

Before the court are two motions: a motion for summary judgment brought by Intervenors Motherhouse Associates LP and Sea Coast at Baxter Woods Associates, LLC, as well as a Rule 56(f) motion filed by Plaintiffs Friends of the Motherhouse, Raymond Foote, and Barbara Weed seeking a continuance to take further discovery. For the reasons set forth below, plaintiffs' Rule 56(f) motion is denied and the intervenors' motion for summary judgment will remain under advisement.

Plaintiffs brought this case alleging that recent amendments to the City of Portland's zoning ordinance are inconsistent with the City's comprehensive plan and failed to comply with applicable procedural requirements for re-zoning. Plaintiffs thus seek a declaratory judgment that the amendments are unlawful. The intervenors are developers whose proposed project depends

upon approvals granted by the City under the zoning amendments. Intervenors have moved for summary judgment arguing that the amendments are not inconsistent with the comprehensive plan and are otherwise lawful.

Whether zoning is consistent with a comprehensive plan is an issue of law. *City of Old Town v. Dimoulas*, 2002 ME 133 ¶ 18, 803 A.2d 1018. The challenger has the burden to prove that the challenged zoning or zoning amendment is inconsistent with the comprehensive plan. *Id.*

Plaintiffs first opposed the intervenors' motion for summary judgment, acknowledging that there were no material disputes of fact. Plaintiffs' Opposition to Intervenors' Motion for Summary Judgment dated December 28, 2015 at 1. In their opposition plaintiffs argued not only that the intervenors' motion should be denied but also that summary judgment should be entered against intervenors and in favor of plaintiffs. *Id.* at 18. However, plaintiffs also suggested in two footnotes that they expected to file a Rule 56(f) motion in order to determine whether the rezoning which they challenge in this action was not an isolated instance. In the footnotes they suggest that if they find other alleged departures from the comprehensive plan, they will seek to amend their complaint. *Id.* at 3 n.1, 4 n.3.

After filing their opposition to the intervenors' motion for summary judgment, plaintiffs filed a Rule 56(f) motion requesting an opportunity to depose city officials. Rule 56(f) allows the court to continue a ruling on a pending motion to allow a party to conduct further discovery where the party "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." M.R. Civ. P. 56(f).

Plaintiffs believe there has been a change in philosophy in the City's Planning Department and the City Council regarding contract zoning and growth management that

2

fundamentally differs from the philosophy in place when the existing comprehensive plan was adopted. In their Rule 56(f) motion plaintiffs state that they wish to conduct further discovery to establish the supposed change in philosophy that they say has led to departures from the comprehensive plan.

First, plaintiffs are not entitled to take discovery in order to determine if they are going to seek to amend their complaint. The sole purpose of a Rule 56(f) motion is to allow a party to take discovery necessary to oppose a motion for summary judgment.

Second, regardless of whether there has been a change in philosophy by the City, the issue before the court is not whether the City's philosophy has changed but whether specific zoning amendments are inconsistent with the comprehensive plan. The question of whether the amendments are consistent with the comprehensive plan will be determined by reference to the amendments and to the comprehensive plan. The summary judgment record already contains the evidence necessary to make this determination, and the court cannot see any reason why the discovery now requested by plaintiffs is needed.

Third, plaintiffs have already opposed the motion for summary judgment and stated that there are no material factual disputes. Plaintiffs have thereby acknowledged that their additional proposed discovery is not necessary to obtain facts that are "essential" to justify their opposition as requited by Rule 56(f).

Under the Law Court's decision in *Bay View Bank N.A. v. The Highland Golf Mortgagees Realty Trust,* 2002 ME 178 ¶ 22, 814 A.2d 449, plaintiffs have not demonstrated that they have been diligent in conducting discovery to date and have not adequately indicated how the discovery requested will influence the outcome of the pending summary judgment motion.

3

The entry shall be:

Plaintiffs' motion under M.R. Civ. P. 56(f) is denied. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March 8, 2016

Thomas D. Warren
Justice, Superior Court

4