MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:     2014 ME 114
Docket:       Cum-14-42
Argued:       September 9, 2014
Decided:      October 16, 2014

Panel:        ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM, JJ.

CHARLES REMMEL et al.

v.

CITY OF PORTLAND et al.

ALEXANDER, J.

[¶1]   The City of Portland and 32 Thomas Street, LLC, appeal from a summary judgment entered by the Superior Court (Cumberland County, *Wheeler, J.*) in favor of Charles and Kathy Remmel and other residents of Portland's West End.   In its judgment, the court concluded that the Portland City Council's approval of a conditional zoning agreement (CZA) did not comply with the City's comprehensive plan and state statutes limiting conditional rezoning. *See* 30-A M.R.S. § 4352(2), (8) (2013).

[¶2]   The City and 32 Thomas Street argue that the court failed to give proper deference to the CZA as a legislative act of the City Council and that the City Council rationally concluded that the CZA is consistent with the comprehensive plan and in basic harmony with existing and permitted uses in the original zone.   Because the record before the City Council supports its legislative

2

determination that the CZA is consistent with the comprehensive plan and because the CZA therefore does not violate relevant state statutes, we vacate the judgment.

## I. CASE HISTORY

[¶3] 32 Thomas Street, LLC, owns a parcel in Portland's West End that includes a 140-year-old sanctuary, used from 1877 to 2011 as the Williston-West Church, and a connected 109-year-old, three-story parish house. The sanctuary and parish house, purchased by 32 Thomas Street in December 2011, are historically and architecturally important; both structures are listed in the National Register of Historic Places and the City has designated them as historical. The structures sit on the edge of Portland's R-4 residential zone, directly abutting the City's R-6 residential zone on two sides.

[¶4] Portland's comprehensive plan establishes that the purpose of the R-4 zone is

> to preserve the unique character of the Western Promenade area of the city by controlling residential conversions and by allowing the continued mix of single-family, two-family, and low-rise multifamily dwellings and other compatible development at medium densities. Single and two-family dwellings are permitted along with single-family manufactured housing, except in National Register Historic Districts. The residential conditional uses listed under R-4 include sheltered care group homes, alteration of an existing structure to accommodate one or more units, and multiplex development (building with 3 or more units). Other conditional uses include schools, churches, and day care facilities . . . .

Portland, Me., Comprehensive Plan at 63 (Vol. 2, Nov. 2002).

[¶5]  In January 2012, 32 Thomas Street applied to the City for conditional rezoning of the property to permit renovation of residential space on the top two floors of the parish house and creation of office space on the building's first floor. The office space was to be used by Majella Global Technologies, a software development company.

[¶6]  The City's ordinance authorizes conditional or contract zoning

> where, for reasons such as the unusual nature or unique location of the development proposed, the city council finds it necessary or appropriate to impose, by agreement with the property owner or otherwise, certain conditions or restrictions in order to ensure that the rezoning is consistent with the city's comprehensive plan.  Conditional or contract zoning shall be limited to where a rezoning is requested by the owner of the property to be rezoned.  Nothing in this division shall authorize either an agreement to change or retain a zone or a rezoning which is inconsistent with the city's comprehensive plan.

Portland, Me., Code § 14-60 (Mar. 4, 2013).

[¶7]  The comprehensive plan establishes numerous goals that guide rezoning decisions, including promoting an economic climate that increases job opportunities and overall economic well-being, supporting neighborhood livability, preserving and improving the City's housing stock, and preserving of the City's architectural and historic sites and structures.

[¶8]  In response to 32 Thomas Street's conditional rezoning application, Portland's planning board held two workshops and a hearing, receiving a total of ninety-seven written comments from the public.  In May 2012, the planning board

4

recommended that the City Council approve the amended proposed conditional zoning agreement for the reuse (including for professional offices) and rehabilitation of the property. In June 2012, the City Council held two public hearings on the proposed change to the City's ordinance, receiving many written comments during the month. The City Council ultimately approved the CZA on June 18, 2012.

[¶9] The CZA requires that (1) the office space on the rezoned property occupy no more than 2800 square feet of floor area on the first floor of the parish house, a space which constitutes approximately seventeen percent of the floor space of the entire property; (2) no more than fourteen nonresident employees work on site at any one time, and that the employees park in provided off-site parking; and (3) the office not generate frequent visits from clients or the public. The CZA also obligates 32 Thomas Street to maintain and preserve the historic buildings, including by rehabilitating and repairing the buildings' exteriors. The specific repairs and maintenance required in the CZA exceed in several respects the minimum maintenance required for historic buildings under the City's Historic Preservation Ordinance.

[¶10]   The Remmels filed a complaint in the Superior Court on July 17, 2012, seeking a declaratory judgment that the CZA is unlawful.[1]   The City and 32 Thomas Street each subsequently moved for summary judgment, and the Remmels filed a cross-motion for summary judgment.   The parties stipulated to the City Council's record as the record for review.   Following a hearing on the cross-motions, the court entered a summary judgment on December 31, 2013, in favor of the Remmels, determining that the rezoning is inconsistent with Portland's comprehensive plan and that the rezoning violates 30-A M.R.S. § 4352(8)(B) by allowing a new use that is inconsistent with existing and permitted uses in the R-4 zone.   The City and 32 Thomas Street timely appealed.

## II.  LEGAL ANALYSIS

A.    Portland's Comprehensive Plan

[¶11]  We review de novo the court's entry of a summary judgment.  *Golder v. City of Saco*, 2012 ME 76, ¶ 9, 45 A.3d 697.   We will affirm the grant of summary judgment "if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law."  *Id*.

[¶12]  Our review of the City Council's action must respect that "zoning is a legislative act" and must give deference to the legislative body.  *Golder*, 2012 ME

---

[1]   The Superior Court correctly observed that a declaratory judgment, and not a Rule 80B appeal, is the proper procedure for challenging the City's zoning decision.  *F.S. Plummer Co. Inc. v. Town of Cape Elizabeth*, 612 A.2d 856, 859 (Me. 1992).

76, ¶ 11, 45 A.3d 697; *Crispin v. Town of Scarborough,* 1999 ME 112, ¶ 18, 736 A.2d 241. Judicial review of a conditional rezoning decision is ultimately limited to determining whether the City Council could rationally have adopted the conditional zone in light of the evidence presented to it, the various policies articulated in the comprehensive plan, and the mandate of 30-A M.R.S. § 4352(8). *See Golder*, 2012 ME 76, ¶ 11, 45 A.3d 697.

[¶13]   The Portland ordinance explicitly permits conditional or contract rezoning that is "consistent with" its comprehensive plan. Portland, Me., Code § 14-60. By statute, zoning ordinances and subsequent rezoning actions must be "pursuant to and consistent with a comprehensive plan adopted by the municipal legislative body." 30-A M.R.S. § 4352(2). When considering whether a rezoning action is "consistent with" a city's comprehensive plan, a court must determine whether the City Council could have, from the evidence before it, found that the rezoning was "in basic harmony with the comprehensive plan." *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 22, 750 A.2d 577; *LaBonta v. City of Waterville*, 528 A.2d 1262, 1265 (Me. 1987). "[T]he challenger bears the burden of proving that the amendment is inconsistent" with the comprehensive plan. *Golder*, 2012 ME 76, ¶ 11, 45 A.3d 697.

[¶14]   A zoning or rezoning action need not perfectly fulfill the goals of a comprehensive plan; it may be in basic harmony with the plan so long as it "strikes

a reasonable balance among the municipality's various zoning goals" or "overlap[s] considerably" with the plan. *Nestle Waters N. Amer., Inc. v. Town of Fryeburg*, 2009 ME 30, ¶ 23, 967 A.2d 702; *Stewart v. Town of Durham*, 451 A.2d 308, 312 (Me. 1982). In addition, a comprehensive plan is considered as a whole; a municipality may conclude that a rezoning action is consistent with a comprehensive plan when it is in harmony with some provisions of the plan, even if the action appears inconsistent with other provisions of the plan. *See Adelman*, 2000 ME 91, ¶¶ 23-24, 750 A.2d 577; *LaBonta,* 528 A.2d at 1265.

[¶15] Portland's comprehensive plan establishes two main goals that are relevant to this appeal: (1) promoting an economic climate that increases job opportunities and overall economic well-being; and (2) preserving the State's historic and archeological resources.[2] While the comprehensive plan does reference the importance of preserving the "unique character" of the R-4 zone, it does not expressly prohibit any nonresidential uses in the zone. Instead, it lists several examples of conditional nonresidential uses permitted in the zone,

---

[2] The comprehensive plan also sets a goal of "encourag[ing] orderly growth and development in appropriate areas of each community, while protecting the State's rural character, making efficient use of public services and preventing development sprawl." Although we reiterate that the Council's rezoning decision need not perfectly fulfill each goal of the comprehensive plan , *see LaBonta v. City of Waterville,* 528 A.2d 1262, 1265 (Me. 1987), the Council could have rationally found that this goal was also fulfilled by the CZA's "neighborhood compatible adaptive reuse of historic religious structures . . . and productive use of such buildings for their long term preservation."

8

including schools, churches, and day care facilities.[3] It also includes group homes that have both a residential and a non-residential component.

[¶16] In the approved CZA, the City Council acknowledged the competing goals of the comprehensive plan and that office uses, to the extent permitted at all, must be permitted in the R-4 zone only in very limited and controlled circumstances. Having considered and balanced the goals of the comprehensive plan, the City Council approved the rezoning only after attaching conditions, discussed above, to ensure that the CZA is consistent with the comprehensive plan.

[¶17] With regard to economic development, the City Council had evidence that the proposed use would allow Majella Global Technologies to remain in Portland and increase job opportunities in the technology sector, and would strengthen the City tax base and maintain property value for surrounding parcels. As for the City's goal of historic preservation, the City Council had evidence from a professional architect and a representative from Greater Portland Landmarks to assist in weighing potential costs to the neighborhood against the benefits of allowing 32 Thomas Street to restore the property in order to preserve it.

[¶18] The City Council ultimately concluded in the CZA that the office component of the proposed use was a "necessary economic value and program

---

[3] We have held that the absence of language in a comprehensive plan expressly permitting a certain type of development should not be read to mean that that type of development is not permitted. *City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 19, 803 A.2d 1018.

element for the feasibility of the productive use of the building complex and the associated rehabilitation investments."[4]  Whatever the property owner's existing obligation under the Historic Preservation Ordinance, the CZA is in basic harmony with the comprehensive plan's historic-preservation goals and with upholding the "unique" architectural and aesthetic "character" of the R-4 zone.  Additionally, the CZA furthers historic-preservation goals by requiring 32 Thomas Street to rehabilitate, renovate, and maintain the property at higher standards than required under the Historic Preservation Ordinance alone.

[¶19]   In light of the evidence before the City Council and the various competing goals of the comprehensive plan, the City Council had a rational basis for its conclusion that the CZA was consistent with the comprehensive plan as a whole, and struck a reasonable balance among the competing goals of the plan. *See Nestle,* 2009 ME 30, ¶ 23, 967 A.2d 702 (a zoning action may be considered as in basic harmony with the plan so long as the action "strikes a reasonable balance among the municipality's various zoning goals"); *LaBonta,* 528 A.2d at 1265.

---

[4]  To the extent that Remmel and other West End residents wish the Council or this Court to consider other possible uses of the historic buildings as shown by renovated church living spaces in other states or even in Europe, we note that such uses were not in the rezoning application before the Council, and based on the evidence before it, the Council made a balanced decision to permit the use consistent with the overarching goals of the comprehensive plan.

## B. Existing and Permitted Uses in R-4 Zone

[¶20]   In addition to being consistent with the municipality's comprehensive plan, conditional or contract zoning must "[e]stablish rezoned areas that are consistent with the existing and permitted uses within the original zones."   30-A M.R.S.  § 4352(8)(B).   Based on our interpretation of similar language in section 4352(2), this language can be interpreted to recognize that a conditional zone is "consistent with the existing and permitted uses in the original zones" when it is in basic harmony with those existing and permitted uses. *See Golder,* 2012 ME 76, ¶ 11, 45 A.3d 697; *LaBonta,* 528 A.2d at 1265.

[¶21]  We review the construction of an ordinance de novo, and the "terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole."  *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 9, 946 A.2d 408. Nonetheless, a municipal body's ultimate characterization of the structure of its own ordinance is to be given substantial deference, *see Jordan v. City of Ellsworth,* 2003 ME 82, ¶ 9, 828 A.2d 768, and the question on review is whether, given the evidence before it and the requirements of 30-A M.R.S. § 4352(8), the

City Council "could rationally have adopted the conditional zone." *Golder*, 2012 ME 76, ¶ 11, 45 A.3d 697.[5]

[¶22]  Section 4352(8)(B) requires the municipal authority to determine whether the rezoned area is consistent with the existing and permitted uses "within the original zones." Uses contemplated in the R-4 zone can be divided into three general categories: (1) permitted residential uses; (2) permitted "other" uses, which are defined to include home occupations[6] subject to the provisions of Portland City Code section 14-410; and (3) "conditional uses," which are permitted only upon the issuance of a use permit subject to specific conditions, for certain residential purposes and certain nonresidential purposes.[7] Portland, Me., Code §§ 14-102, 14-103. The proposed use is consistent with both "other" uses, namely home occupations, and "conditional" uses contemplated in the zone.

[¶23]  Although the proposed use by Majella Global is unlikely to meet the requirements of a home occupation because it will house more than one

---

[5] The City Council's factual determinations are reviewed for clear error. *See Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 13, 942 A.2d 1202.

[6] Pursuant to the ordinance, "home occupations" must not occupy more than a 500 square feet or more than 25 percent of the floor area of a dwelling unit, whichever is less, and have no more than one nonresident employee. One of the permitted home occupations is "computer programming." Portland, Me., Code § 14-410(b)(6) (Mar. 4, 2013).

[7] We agree with the trial court that, to the extent that the City Council, because the property abuts the R-6 zone, considered that professional office uses are permitted in the R-6 zone, this was error. The City Council's considerations must be limited to existing uses in the "original zones." 30-A M.R.S. § 4352(8)(B). This does not change our conclusion that the City Council had a rational basis for its determination that the use is consistent with existing and permitted uses in the R-4 zone.

nonresident employee, the City's designation of home occupations as a permitted use is relevant. Home occupations have a broader purpose under the ordinance "to allow the secondary and incidental use of a residence for the conduct of appropriate occupations whose external activity levels and impacts are so limited as to be compatible with the residential character of the neighborhood." Portland, Me., Code § 14-410. While the scale of the proposed use would no doubt be greater than that of a home occupation, the CZA imposes a number of restraints to ensure that the proposed office use remains limited and "neighborhood compatible," including that the business must provide off-site parking for its employees and must occupy not more than seventeen percent of the property, reserving the second and third floors for residential use.[8] These conditions limit the "external activity levels and impacts" of Majella's business in the same way that would be required of a home occupation that is permitted in the R-4 zone.

[¶24] Conditional nonresidential uses under the ordinance are limited to (1) institutional uses, including elementary, middle, and secondary schools and

---

[8] The Council also recognized in the CZA that

offices in residential zones, particularly in the R-4 zone, have been limited and any allowance of an office use in the R-4 zone should only be considered for large, unique, and historically significant structures which have not previously been in residential use, and must be carefully considered and controlled to achieve an appropriate balance between policies supporting neighborhood preservation and policies supporting economic development and preservation of the City's architectural and historic heritage . . . .

places of assembly (defined to include community halls and private clubs); and (2) "other" uses including daycare facilities, nursery schools, and "sheltered care group homes" for up to twelve residents plus staff. Portland, Me., Code § 14-103(a)-(b). While institutional uses, day cares, and group homes may serve the residential aspects of the R-4 zone, the language of the ordinance does not mandate that each use serve a greater community purpose.

[¶25] Group homes, day care facilities, and schools may provide incidental community benefits, but they may also be privately owned and ultimately may be as "commercial" in nature as a small software development company. The record before the City Council included an extensive list of uses, including nursery schools and office space for non-resident use, that had reportedly been made of the property while it operated as a church.[9] Taken as a whole, these previous uses, as well as permitted and conditionally permitted uses in the R-4 zone, such as private clubs, day cares, and group homes, each have the potential to be more disruptive than an office with a maximum of fourteen employees and limited visits by the public.

---

[9] The list of activities previously occurring on the Property included operation of The Children's Nursery School; operation of Motto Citizens (office space); administration of the Maine Gay Men's Chorus (office space and a storage room); music recitals, rehearsals, and performances; church services; Waynflete Advance Leadership Training; Aerobics classes; meetings of an Alcoholics Anonymous group with more than 100 attendees; book sales; yoga classes; dance classes; and fitness classes. Notably, there is no indication that these uses existed at the time of the rezoning application at issue here or that they were permitted at the time they occurred. Remmel asserts that not all of these uses would have been legally permitted in the R-4 zone, except perhaps for the church's ministry.

[¶26] Based on the evidence before it and its mandate to consider existing and permitted uses pursuant to 30-A M.R.S. § 4352(8)(B), the City Council concluded that the proposed use was in basic harmony with uses in the neighborhood, which it described to "include a mix of residential, commercial and institutional uses." Consistent with previous opinions involving a City's application of its own ordinance to a legislative rezoning decision, *see Golder*, 2012 ME 76, ¶ 11, 45 A.3d 697; *Nestle*, 2009 ME 30, ¶ 23, 967 A.2d 707; *LaBonta*, 528 A.2d at 1265, the City Council had a rational basis on which to reach this conclusion.

The entry is:

> Judgment vacated. Remanded with direction to affirm the decision of the City Council.

---

**On the briefs:**

Danielle P. West-Chuhta, Esq., and Patricia A. McAllister, Esq., City of Portland, Portland, for appellant City of Portland

Mary E. Costigan, Esq., Bernstein Shur, Portland, for appellant 32 Thomas Street, LLC

Bruce A. McGlauflin, Esq., Petruccelli, Martin & Haddow, LLP, Portland, for appellees Charles Remmel, et al.

Orlando E. Delogu, Esq., appellee pro se

**At oral argument:**

Patricia McAllister, Esq., for appellant City of Portland

Bruce McGlauflin, Esq., for appellees Charles Remmel et al.

Orlando Delogu, Esq., pro se appellee

Cumberland County Superior Court docket number CV-2012-312
FOR CLERK REFERENCE ONLY