STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-15-26

RICHARD BALANO,

Petitioner,

v.                                                            **ORDER**

TOWN OF KITTERY, PLANNING BOARD,

and

275 U.S. ROUTE 1, LLC,

Respondents.

## I.      Background

Richard M. Balano appeals to this court from a decision by the Town of Kittery Planning Board. M.R. Civ. P. 80B. Balano contends the Board erred in approving a site plan application for a hotel development on Route 1 in Kittery. For the reasons set forth below, the appeal is denied and the Board's decision is affirmed.

Intervenor and respondent 275 U.S. Route 1, LLC ("the applicant") submitted an application for site plan review for an 83-room hotel at 275 Route 1 in Kittery. The Town of Kittery Planning Board ("the Board") held a public hearing on the final site plan application on August 20, 2015. Various parties spoke for and against the proposal and the Board took evidence. After considering the evidence and addressing each of the

1

various site plan review criteria, the Board voted 5-0 to approve the application, with conditions. This appeal followed.

## II. Discussion

### A. Rule 80B Standard

In Rule 80B appeals, the court reviews the municipal decision below for errors of law, abuse of discretion, or findings not supported by substantial evidence. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The party challenging the decision has the burden of proof. *Id.* When the appeal comes before the Superior Court after multiple levels of review at the municipal level, the court reviews the operative decision directly. *Dunlop v. Town of Westport Island*, 2012 ME 22, ¶ 13, 37 A.3d 300.

Municipal ordinances are interpreted and applied by the court de novo. *Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245. "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the Ordinance as a whole." *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 9, 828 A.2d 768.

### B. Standing

The Town first argues Balano lacks standing to bring this appeal. The applicable ordinance provides "[a]n aggrieved party with legal standing may appeal a final decision of the Planning Board" to Superior Court pursuant to Rule 80B within forty-five days from the decision. Kittery, Me., Land Use & Development Code, § 16.6.2(A) (July 26, 2010) ("Ordinance"). There is no dispute this appeal was timely filed.

To establish legal standing, an appellant must show (1) participation at the administrative proceeding, and (2) a particularized injury as a result of the decision.

2

*Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 11, 879 A.2d 1007. The term "party" is broadly interpreted to mean an "any participant in the proceedings who is aggrieved" by the decision of the municipal agency. *Id.* ¶ 16. "Because 'matters before a local board of appeals are conducted in a fashion far less formal than court proceedings,' an appellant need not have formally appeared as a party as long as it participated throughout the process." *Friends of Lincoln Lakes v. Town of Lincoln*, 2010 ME 78, ¶ 12, 2 A.3d 284.

The Town argues Balano failed to "participate throughout the process sufficient to confer standing. Prior to the hearing, Balano submitted a letter to the Town Planner detailing his opposition to the proposal. The Town Planner read the letter aloud at the public hearing, which is reflected in the meeting minutes and summarized as: "Rich Balano, Ox Point Drive resident, who has concerns about the design of the project not meeting Kittery code, specifically the sloped roof and building height." (R. 4.)

This was adequate participation to confer standing. *See Witham Family Ltd. v. Town of Bar Harbor*, 2011 ME 104, ¶ 10, 30 A.3d 811 ("'Appearance,' for Rule 80B standing purposes, has been expansively interpreted to refer to any 'participation'—formal or informal, whether personally or through an attorney—in the municipal proceedings by, for example, 'voic[ing] . . . concerns for traffic, noise and aesthetics,' or 'express[ing] opposition' at a municipal hearing; no formal appearance is necessary."). Although Balano did not personally appear, his letter, detailing specific grounds for opposing the project, was read aloud and considered by the Board. Had Balano appeared and read the same letter, this would clearly establish participation. Given the distaste for overly formal requirements to establish standing in the municipal context, *see id.*, the

3

court concludes Balano participated adequately to meet the first prong of the standing test. *Cf. Jaeger v. Sheehy*, 551 A.2d 841, 842 (Me. 1988) (conversations with municipal official prior to hearing about concerns, but never expressing overt opposition to a project inadequate participation).

As to the "particularized injury" requirement, Balano asserts that he lives on Ox Point Drive, a dead-end street, and the proposed hotel will be constructed on land adjoining his only point of access to Route 1 and increased traffic will burden this access. He also alleges injury from his "westward view," increased traffic, and noise from trash removal. (Balano Aff. ¶¶ 5-7.)[1]

The Town concedes Balano lives "in the general area of the proposed motel," Town Brief 11, but argues this is insufficient to satisfy the injury requirement. "A person suffers a particularized injury only when that person suffers injury or harm that is in fact distinct from the harm experienced by the public at large." *Nergaard v. Town of Westport Island*, 2009 ME 56, ¶ 18, 973 A.2d 735 (citation omitted) (quotation marks omitted). "[S]tanding has been liberally granted to people who own property in the same neighborhood as the property that is subject to a permit or variance." *Id.*

Balano lives in the neighborhood of the proposal on a dead-end street accessible primarily from Route 1. Because of this uniquely limited access, Balano must drive through the Route 1 intersection adjoining the proposal and would necessarily do so more often than other members of the public. The introduction of additional traffic to the area

---

[1] The applicant argues that the court should not consider Balano's affidavit in determining whether he has standing. (Intervenor Brief 2 n.1.) Because a lack of standing would be grounds to dismiss the appeal without considering the merits, the court considers the affidavit. *See Norris Family Assocs., LLC*, 2005 ME 102, ¶ 17 n.5, 879 A.2d 1007 (stating court may consider affidavit submitted in opposition to motion to dismiss Rule 80B appeal for lack of standing). The rationale for limiting a Rule 80B appeal to the record before the Board would not be served by ignoring Balano's affidavit because his standing was not at issue below.

will therefore affect Balano in a manner different from the public at large. *Cf. Nergaard*, 2009 ME 56, ¶ 20, 973 A.2d 735 (no standing absent evidence parties lived in the neighborhood or were unique in use of a road that adjoined proposed boat launch ramp).

Balano has standing to appeal the Board's decision. The court next turns to the merits of the appeal.

### C. Grounds for Appeal

Balano raises five arguments, each of which he contends is grounds to vacate the decision: (1) the Board granted an unlawful variance for the proposed structure's roof shape and height, (2) even if the Board had authority to grant the waiver, there is insufficient evidence in the record to support the decision, (3) the Board failed to grant a special exception for the project, which is required for all developments exceeding 40 feet in height, (4) the Board erred in concluding the development complied with the Town's comprehensive plan, (5) the Board abused its discretion in imposing buffer conditions dependent upon actions by adjoining property owners not before the Board.

### 1. Flat Roof Design Standard

Balano argues the Board erred in approving the proposal with a flat roof design. The Town's ordinance provides:

> A building's prominent roofs must be pitched a minimum of 4:12 unless demonstrated to the Planning Board's satisfaction that this is not practicable. Acceptable roof styles are gabled, gambrel, and hipped roofs. Flat roofs, shed roofs, and roof facades (such as "stuck on" mansards) are not acceptable as prominent roof forms except as provided above.

Ordinance, § 16.3.2.11(D)(3)(b)(ii) (R. 235-36.) The property is zoned C-1, which permits a maximum building height of 40 feet. *Id.* § 16.3.2.11(D)(2). The ordinance defines "height of a building" for flat roofs as the "vertical measurement from the

5

average grade between the highest and lowest elevation of the original ground level to the highest point of the roof beams." *Id.* § 16.2.2.

At the hearing, the applicant put forth three reasons why a pitched roof design would not be practicable: (1) inability to adequately screen mechanical equipment, (2) safety issues, and (3) increased mass and scale to compensate for fourth-floor space constraints. (R. 18-19.)

Balano argues that by not requiring a pitched roof design under Section 16.3.2.11(D)(3)(b)(ii), the Board effectively granted an unlawful variance of the height restrictions. The Town responds that the ordinance does not require a pitched roof if the Board, in its discretion, determines such design is "not practicable." The applicant presented evidence to the Board's satisfaction that a pitched roof was impracticable. (R. 18-19.) Balano's contention that the Board's practicability conclusion was unsupported lacks merit. *See Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684 (noting Board entitled to "substantial deference" on findings and conclusions as to what meets a particular ordinance standard). The Board's conclusion is supported by substantial evidence in the record. (R. 18-19.)

Balano's true objection is the height calculation depends on the roof design. Balano argues that by allowing a flat roof design, the Board constructively granted an unlawful variance or special exception from the height standards imposed by the ordinances.

### 2. Building Height Calculation

The proposed hotel is 40' in height, parapets[2] not included. According to the elevation plans, the tallest parapet extends 11' above the roofline, and thus the proposed hotel will stand 51' at its highest point. (R. 142.) Balano argues that even if Section 16.3.2.11(D)(3)(b)(ii) allows for a flat roof, this amounts to a variance from the height restrictions because height is measured differently depending upon roof style. *See* Ordinance, § 16.2.2 (setting forth differing calculation methods for flat, mansard, gambrel, and pitched roofs under "height of a building" definition). At a minimum, Balano argues the applicant needs a special exception to build a structure exceeding forty feet in height. *See* Ordinance 16.3.2.11(C)(1)(k) (requiring special exception permit for "[b]uildings and structures over forty (40) feet").

The Town points out the parapets are irrelevant because the ordinance only measures buildings with flat roof designs to the highest point of the roof beams. Ordinance, § 16.2.2. The Town further emphasizes the ordinance definition for "height of a structure" expressly excludes "chimneys, steeples, antennas, and similar appurtenances which have no floor area." *See id.* The Town asserts the parapets constitute a "similar appurtenance" because they have no floor area.

Here too, Balano's arguments fail. If characterized as a "building," the proposed hotel does not require a special exception because height is only measured to the roofline and the roofline does not exceed forty feet. *See* Ordinance, § 16.2.2; (R. 142.) If characterized as a "structure," there was evidence in the record that support the conclusion the parapets are a "similar appurtenance," which is not measured for purposes of height standards. This interpretation of "similar appurtenance" would further the intent

---

[2] A parapet is a structural element that extends a wall vertically above the roofline at the edge of a roof. The parapets depicted on the applicant's plan resemble enlarged capitals atop a Doric Roman column. (R. 141.)

7

of the ordinance to exclude ornamental structures on top of a building from a height calculation. *See Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 12, 772 A.2d 256 (rejecting challenger's argument that ornamental cupola ought to be included within the height calculation as "overtechnical" and contrary to the intent of the ordinance). Under either the definition of "building" or "structure," the fact the parapets extend the hotel's height beyond forty feet is immaterial to the height measurement under the ordinances.

To the extent the ordinances apply different height standards to different roof designs, this is a legislative choice with the discretion of the drafters of the ordinance, which expressly delegates power to determine practicable roof designs to the Board. The Board did not grant a waiver or variance because the plain language of the ordinance allows for the Board to approve a flat roof design if satisfied that a pitched roof is impracticable. *See York v. Town of Ogunquit*, 2001 ME 53, ¶ 10, 769 A.2d 172 (board has authority under ordinances to make waivers upon certain findings; such waivers did not amount to unlawful variances that had to be approve by ZBA). This is a substantive standard that was applied by the Board and supported by record evidence. (R. 18-19.)

This case is therefore distinguishable from cases involving conflicting standards and allowed Planning Boards to grant de facto variances where such power was the exclusive domain of the Zoning Board of Appeals. *See Sawyer v. Town of Cape Elizabeth*, 2004 ME 71, ¶ 14, 852 A.2d 58 (citing *Perkins v. Town of Ogunquit*, 1998 ME 42, 709 A.2d 106). Here, the Planning Board had the power to conclude that the pitched roof was design was not practicable. The height calculation methods that flowed from

allowing a flat roof design were plainly contemplated and permitted under the ordinances. *Cf. Sawyer*, 2004 ME 71, ¶ 16, 852 A.2d 58.

### 3. Waiver: Comprehensive Plan

The Town argues that Balano's remaining arguments were not raised before the Board and are therefore waived. *See Brown v. Town of Starks*, 2015 ME 47, ¶ 7, 114 A.3d 1003 (failure to raise standard of review issue before Board below waived consideration of the issue on appeal); *see also Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 8, 868 A.2d 230. "An issue is raised and preserved if there was a 'sufficient basis in the record to alert the court and any opposing party to the existence of that issue.'" *Verizon New Eng. v. PUC*, 2005 ME 16, ¶ 15, 866 A.2d 844 (citation omitted) (quotation marks omitted).

Balano effectively raised issues surrounding the building's height at the municipal level, thus arguments (1)-(3) as set forth above were preserved. Argument (5) challenges an approval condition imposed as part of the decision and thus could not have been raised prior to the hearing. Balano's arguments regarding consistency with the comprehensive plan, however, was not raised and would appear to have been waived. Even if the argument was not waived, Balano fails to meet his burden demonstrate how the Board's decision with respect to this site plan application is not in "basic harmony" with the Town's comprehensive plan. *See Remmel v. City of Portland*, 2014 ME 114, ¶ 13, 102 A.3d 1168. Although the plan, like the ordinance, limits buildings and structures in the C-3 zone to forty feet in height, the proposed hotel complies with the height standards as calculated by the ordinances for the reasons stated above.

### 4. Approval Condition: Buffer

9

Balano lastly argues that the proposal does not meet the applicable buffer standard. *See* Ordinance § 16.3.2.11(D)(3)(c)(i) ("A vegetated landscape planter strip must be provided a minimum of thirty (30) feet in depth adjacent to the right of way of all public roads . . . .") Balano argues the Board unlawfully conditioned approval upon the planting and maintenance of trees along a strip within a Maine Department of Transportion (MaineDOT) right-of-way.

This argument misconstrues the condition imposed and the consequences should the MaineDOT object to additional plantings. The Board conditioned approval as follows: "The existing vegetated area within the Route 1 right of way will be planted with additional trees if MaineDOT provides permission. In the event the permission is not obtained the 30 foot wide reserve buffer area must be planted prior to the proposed development's completion." (R. 13.) Thus, if MaineDOT denies the request to plant additional vegetation buffer along the strip, the applicant has set aside an *additional* thirty feet of buffer area that will be planted, in accordance with a site plan submitted to the Board. (R. 46.)

The Board properly imposed a valid approval condition that will ensure compliance with the buffer standard. Belano's challenge on this point lacks merit.

## III.  Conclusion

The Board's decision properly interpreted and applied the applicable ordinance standards and was supported by substantial evidence. The appeal will be denied and the decision will be affirmed.

10

The entry shall be:

The petitioner's Rule 80B appeal is DENIED. The decision of the Town of Kittery Planning Board is AFFIRMED.

SO ORDERED.

DATE: May 11, 2016

John O'Neil, Jr.
Justice, Superior Court