MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 32
Docket:      Yor-23-154
Argued:      February 6, 2024
Decided:     May 2, 2024

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

MICHAEL DAHLEM

v.

CITY OF SACO et al.


DOUGLAS, J.

[¶1]  The City of Saco, Amarjit Singh Dhillon, and Ajinder Kaur (collectively Appellants) appeal from the Superior Court's (York County, *Mulhern, J.*) grant of partial summary judgment to Michael Dahlem, who owns property neighboring Dhillon and Kaur's property and who challenged a contract zone agreement that would have allowed development of Dhillon and Kaur's property in Saco.  Dahlem cross appeals from the court's dismissal of his Rule 80B appeal and subsequent denial of his motion to reconsider that dismissal, and from the court's denial of summary judgment on two counts in his complaint.  We affirm in all respects and dismiss Dahlem's cross-appeal as moot.

## I. BACKGROUND

[¶2]  The following facts are drawn from a joint statement of material facts and a stipulated record submitted to the court on cross-motions for summary judgment.[1]  *See Ross v. Acadian Seaplants, Ltd.*, 2019 ME 45, ¶ 3, 206 A.3d 283.

[¶3]  This case involves a decade-long effort to obtain permission to build a single-family residence on Oceanside Drive in the Saco neighborhood of Kinney Shores.  In 1980, J. George and Nancy Driscoll[2] jointly acquired, by a single deed, two adjacent lots, identified as Lots 201 and 202.  There was a single-family residence on Lot 201; Lot 202 was undeveloped.  At the time, both lots were "grandfathered" nonconforming uses that did not comply with the City's zoning ordinances.  In 1986, George conveyed his interest in Lot 202 to Nancy and Nancy conveyed her interest in Lot 201 to George.

[¶4]  In 2009, the Driscolls applied for a permit to build a single-family residence on Lot 202, then owned only by Nancy.  The code enforcement officer

---

[1]  Although courts review Rule 80B appeals based on the administrative record, *see* M.R. Civ. P. 80B(f), as we note below, Dahlem challenges a legislative, not adjudicatory, act, *see infra* ¶¶ 17-20.  In this circumstance, a declaratory judgment action is a proper avenue for redress and may proceed through cross-motions for summary judgment based on a stipulated record.  *See Ross v. Acadian Seaplants, Ltd.*, 2019 ME 45, ¶¶ 6-7, 206 A.3d 283 (reviewing cross motions for summary judgment on claims seeking, inter alia, declaratory relief, based on a stipulated record).

[2]  For the sake of clarity, we refer to the Driscolls individually as George and Nancy.

denied their application. The Saco Zoning Board of Appeals affirmed the denial, and the Superior Court (York County, *Brennan*, *J.*) affirmed the Board's decision. The Driscolls appealed, and we affirmed the court's holding in a memorandum of decision, stating that Lot 202 "lost its grandfathered status as a buildable lot" under the City's zoning ordinances when it was held in common ownership with Lot 201 and that the subsequent division of the parcels did not restore its grandfathered status. *Driscoll v. City of Saco*, Mem-11-138 at 1 (Sept. 22, 2011). We explained that "the Board's denial of the request for a variance is final, and absent a change in factual circumstances, the Driscolls are precluded from applying for a variance for" Lot 202. *Id.* at 2 (citations omitted).

[¶5]  The Driscolls continued to explore options that might allow them to build a residence on Lot 202. In 2015, they applied for a contract zone agreement that would "legislatively establish" their land "as two separate, buildable lots." *See* 30-A M.R.S. § 4352(8) (2024) (allowing municipal zoning ordinances to include provisions for contract zoning); *see also* Saco, Me., Zoning Ordinance § 1403-2 (2012) (authorizing contract zoning in Saco). The Saco Planning Board held a public hearing to consider the request and recommended that the Saco City Council deny the application. After holding its

4

own public hearing, the City Council agreed with the Board's recommendation and denied the application.

[¶6]  The Driscolls applied again in 2017 to have their property rezoned by contract.  This time, the City Council reversed course and voted to approve the application.  The rezoning was codified in the "Contract Zone Agreement By and Between J. George and Nancy S. Driscoll and the City of Saco, November 20, 2017," which exempted Lots 201 and 202 from the zoning restrictions that had prevented the Driscolls from building a house on Lot 202.

[¶7]  The 2017 agreement required the Driscolls to seek the U.S. Environmental Protection Agency's (EPA) consent before connecting the new house to the City's sewer system.[3]  The 2017 agreement also contained two deadlines:

> Failure of the Applicants to secure site plan approval from the Planning Board within one year of the approval of this Contract by the Saco City Council shall render this Contract null and void.  In the event that permits or approvals are delayed due to circumstances beyond the control of the Applicants, this one year deadline may be extended by one year upon written request to the City Council.
>
> . . . .

---

[3]  The Driscolls submitted a site plan following the approval of the 2017 agreement, which indicated that they intended to use a septic system instead of connecting to the City's sewer system.

> Failure of the Applicants, or buyers of a second lot that is created by virtue of this Agreement, to seek a single family dwelling building permit as described in application materials for this Contract Zone within two (2) years from the date of approval shall render this approval and Contract null and void. This two year deadline may be extended by one year upon written request to the City Council.

Because the 2017 agreement's effective date was November 20, 2017, the Driscolls had to "secure site plan approval from the Planning Board" by November 20, 2018, and "seek a single family dwelling building permit" by November 20, 2019.

[¶8] The Driscolls secured site plan approval on October 16, 2018, thereby meeting the November 20, 2018, deadline. The site plan approval was valid for two years. However, the Driscolls did not obtain a building permit by November 20, 2019, nor did they make a written request to extend that deadline by another year. George passed away at some point following the execution of the 2017 agreement, and there were significant delays in obtaining from the Maine Department of Environmental Protection a permit to alter coastal sand dunes, which was required before the Driscolls could apply for a building permit for Lot 202. *See* 38 M.R.S. §§ 480-B(1), (8), 480-C(1)-(2) (2024). Ultimately, the sand dune permit was issued on June 9, 2021.

6

[¶9]  Nancy then requested additional time to seek a building permit.  At meetings on August 30 and September 7, 2021, the City Council took up and then approved her request.  Nancy and the City entered into an agreement entitled "<u>Amended</u> Contract Zone Agreement by and Between J. George and Nancy S. Driscoll and the City of Saco, <u>Approved</u> November 20, 2017, <u>Amended</u> <u>September 13, 2021</u>."[4]  The 2021 agreement provided, among other things, the following:

> <u>Due to unforeseen delays in obtaining permits required to</u> <u>construct the proposed residence, the original Agreement between</u> <u>the Applicants and the City expired on November 20, 2019.</u>
>
> . . . .
>
> <u>Saco City Council and the Applicant agreed to an extension of one</u> <u>year from the date of the DEP issuance</u> [of] <u>the Sand Dune</u> <u>Alteration Permit during the September 7, 2021 Council meeting.</u>"

The 2021 agreement further provided that it would be "null and void" if Nancy failed to "<u>secure</u> a single family dwelling building permit . . . <u>by June 9, 2022</u>"; that this "deadline may <u>not</u> be extended"; and that Nancy was required to seek EPA approval to connect to the City sewer and submit "<u>[e]vidence of</u>

---

[4]  The underscoring appears in the 2021 agreement and indicates the text in that agreement that did not appear in the 2017 agreement.

<u>undertaking a good faith effort to obtain such approval</u>" before applying for a building permit.

[¶10] By this time, the site plan approval issued by the Saco Planning Board in 2018 had lapsed, so Nancy applied for approval again. At a meeting on October 19, 2021, the Planning Board voted to approve Nancy's new site plan.

[¶11] On November 17, 2021, Dahlem filed a six-count complaint against the City and Nancy in Superior Court, appealing the City's approval of the 2021 agreement pursuant to M.R. Civ. P. 80B (Count 6) and seeking a declaration that the contract zone agreement was unlawful on various grounds (Counts 1-5).[5]

[¶12] The court (York County, *Mulhern, J.*) subsequently dismissed the Rule 80B appeal (Count 6) on the City's motion. During the pendency of the City's motion, Nancy sold Lot 202 to Dhillon and Kaur, who were substituted as defendants in the case. *See* M.R. Civ. P. 25(c). Dahlem subsequently moved for

---

[5] Count 1 sought a declaration that our decision in *Driscoll v. City of Saco,* Mem-11-138 (Sept. 22, 2011), precluded the construction of a building on Lot 202. Count 2 sought a declaration that the 2017 agreement expired "at the latest, on November 21, 2019," and could not thereafter be extended. Count 3 sought a declaration that the 2021 agreement was unlawful under the City's contract zoning ordinance. Count 4 sought a declaration that the 2021 agreement was preempted by state law. And Count 5 sought a declaration that the 2021 agreement was incompatible with the City's comprehensive plan.

8

summary judgment on the remaining counts and Appellants countered by filing cross-motions for summary judgment.

[¶13] The court granted summary judgment to Appellants on Count 1, determining that our prior decision did not preclude the City from using its legislative authority to allow construction on Lot 202. The court granted summary judgment to Dahlem on Counts 2, 3, and 4, declaring that the 2017 agreement

- "became null and void in 2019 and thereafter could not be amended or extended" (Count 2);

- "is invalid and unlawful for noncompliance with the City's contract zoning ordinance" (Count 3); and

- "is inconsistent with Maine's Mandatory Shore[land] Zoning statute and therefore preempted and invalid" (Count 4).

The court denied summary judgment to all parties on Count 5 because it could not "definitively say" whether the 2021 agreement was compatible with the City's comprehensive plan in effect in 2021.[6] The court also denied Dahlem's motion to reconsider the court's dismissal of Count 6, the Rule 80B appeal. *See* M.R. Civ. P. 7(b)(5).

---

[6] The parties later stipulated to the dismissal of Count 5, in order to create an appealable final judgment. *See Fournier v. Flats Indus., Inc.*, 2023 ME 40, ¶ 13, 298 A.3d 810.

[¶14] Appellants timely appealed. Their appeal raises three principal issues. First, they contend that Dalhem's Rule 80B appeal, which the court dismissed for lack of standing, is the exclusive procedural remedy in this case and the court therefore erred by entertaining Dalhem's declaratory judgment claims. Second, Appellants maintain that the court erred by determining that the 2017 agreement had expired on November 20, 2019, and that it could not be extended thereafter. Third, they assert that the court erred by declaring that the 2021 agreement was unlawful under the City's contract zoning ordinance and that the 2021 agreement was preempted by state law.

[¶15] Dalhem cross-appealed. He challenges the court's dismissal of his Rule 80B appeal and its denial of summary judgment on his claims that Appellants are precluded from building on Lot 202 and that the 2021 agreement is inconsistent with the City's comprehensive plan.

## II. DISCUSSION

### A. Standard of Review

[¶16] "We review de novo the grant or denial of cross-motions for summary judgment." *Osprey Landing, LLC v. First Am. Title Ins. Co.*, 2017 ME 46, ¶ 7, 157 A.3d 247. "Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a

matter of law." *Id.* (citing M.R. Civ. P. 56(c)). "Because the facts presented are not in dispute, we review the summary judgment de novo for errors of law in the court's interpretation of the relevant legal concepts."[7] *Ross*, 2019 ME 45, ¶ 7, 206 A.3d 283.

## B.    Procedural Remedy

[¶17]    Appellants contend that the City Council's action in September 2021 constituted a waiver of the deadlines in the 2017 agreement and was therefore an adjudicatory act that may only be challenged in a Rule 80B appeal. *See Hathaway v. City of Portland*, 2004 ME 47, ¶¶ 1, 6-7, 14-16, 845 A.2d 1168 (reviewing in a Rule 80B appeal the enforcement of a contract zone agreement). Appellants maintain that the court properly dismissed Dahlem's Rule 80B claim as untimely and for lack of standing but erred by considering Dahlem's declaratory judgment claims.

[¶18] Dahlem counters—and we agree—that the City's action in 2021 was not an adjudicatory act but rather was a legislative act that is properly

---

[7] If, as here, the parties seek resolution of a dispute based on a stipulated record and do not intend to proceed to trial on any disputed facts an alternative and perhaps more efficient approach may be a motion for judgment on a stipulated record, rather than cross-motions for summary judgment. *See Rose v. Parsons*, 2015 ME 73, ¶ 8, 118 A.3d 220 ("When presented with a stipulated record, a trial court may—unlike on a motion for summary judgment—draw factual inferences from that evidence and decide disputed inferences of material fact to reach a final result."); *Rufus Deering Co. v. Spike*, No. RE-05-124, 2006 WL 2959678, at *1 (Me. Super. Ct. July 25, 2006) (citing *Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urb. Dev.*, 768 F.2d 5, 11-12 (1st Cir. 1985)).

reviewable in a declaratory judgment action.  We have consistently stated that zoning—including zoning via a contractual agreement—is a "legislative act" that is reviewable in a declaratory judgment action.  *See Remmel v. City of Portland,* 2014 ME 114, ¶¶ 10 n.1, 12, 102 A.3d 1168 ("[A] declaratory judgment, and not a Rule 80B appeal, is the proper procedure for challenging [a municipality's] zoning decision."); *Crispin v. Town of Scarborough*, 1999 ME 112, ¶ 18, 736 A.2d 241 (explaining that contract zoning is a legislative act); *F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 858-59, 861 (Me. 1992) (indicating that both the enactment and amendment of a zoning ordinance are legislative acts); *see also* 14 M.R.S. § 5954 (2024) (providing that "[a]ny person . . . whose rights, status, or other legal relations are affected by a . . . municipal ordinance" may seek declaratory relief).

[¶19]  Appellants' characterization of the City's 2021 action as a waiver of the 2017 agreement's deadlines relies on their argument that the 2017 agreement did not expire in 2019.  As discussed below, this argument lacks merit.  *See infra* ¶¶ 21-31.  However, even if we were to accept Appellants' argument that the 2017 agreement did not expire in 2019, the City Council's action still constituted a legislative act reviewable in a declaratory judgment action.

12

[¶20]  In approving the 2021 agreement, the City Council did not just waive enforcement of the 2017 agreement's deadlines, it altered the terms of the 2017 agreement by setting a new deadline and requiring Nancy to demonstrate that she sought, in good faith, EPA approval for a sewer hookup. These new provisions, like every other provision in the agreement, are legislative enactments reviewable in a declaratory judgment action.  *See Plummer*, 612 A.2d at 861 ("Zoning is a legislative act, and the adoption of a zoning amendment, like the enactment of the original zoning ordinance[,] is also a legislative act." (alterations, citation, and quotation marks omitted)).  The City Council's approval of the 2021 agreement was a legislative act properly reviewable in a declaratory judgment action, not a Rule 80B appeal, so the timing and standing requirements of Rule 80B are immaterial.[8]

## C.  The 2017 Agreement

[¶21]  The 2017 agreement provided that the failure to "seek a single family dwelling building permit" by November 20, 2019, would "render this

---

[8]  For the same reason, we dismiss as moot Dahlem's cross appeal challenging the court's dismissal of his Rule 80B appeal and subsequent denial of his motion for reconsideration.  *See Mainers for Fair Bear Hunting v. Dep't of Inland Fisheries & Wildlife*, 2016 ME 57, ¶ 5, 136 A.3d 714 ("An issue is moot when there remains no real and substantial controversy, admitting of specific relief through a judgment of conclusive character." (quotation marks omitted)); *see also Carroll F. Look Constr. Co. v. Town of Beals,* 2002 ME 128, ¶¶ 5-17, 802 A.2d 994 (dismissing Rule 80B appeal as moot while addressing the merits of other claims brought in the same complaint).

approval and Contract null and void." That deadline could be "extended by one year upon written request to the City Council." Appellants assert that, despite this language and the uncontroverted evidence in the record indicating that the Driscolls neither applied for a building permit by the initial deadline nor requested to extend the one-year deadline, the 2017 agreement nonetheless remained in effect. We disagree.

[¶22] While a contract zone agreement constitutes a "legislative act" amending a municipality's zoning laws, it is still a contract. We therefore apply established rules of contract interpretation to ascertain the meaning of terms contained in a contract zone agreement. Whether contract language is ambiguous, meaning "reasonably susceptible to different interpretations," is a question of law that we review de novo. *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 9, 983 A.2d 400 (alteration and quotation marks omitted). "When a contract is unambiguous, its construction is also a question of law," and we interpret the contract "according to the plain meaning of its language," avoiding "any interpretation that renders a provision meaningless." *Id.* "If the contract language is ambiguous, however, then the proper interpretation becomes a question of fact for the factfinder." *InfoBridge, LLC v. Chimani, Inc.*, 2020 ME 41, ¶ 13, 228 A.3d 721 (quotation marks omitted).

14

### 1. "Seek" a Building Permit

[¶23]   Dhillon and Kaur argue that the deadline only required the Driscolls to "seek," rather than "secure," a building permit by November 20, 2019.  They maintain that the Driscolls tolled the deadline because they hired firms to complete preliminary design and survey work, applied for DEP permits, and applied for site plan approval before that date.   Dahlem counters that these actions were insufficient to toll the deadline.  We agree with Dahlem.

[¶24]   The 2017 agreement clearly required the Driscolls to at least submit a building permit application by November 20, 2019.  A person "seeks" a permit when they ask the permitting entity to issue the permit.  *See Seek*, Webster's II New College Dictionary (3d ed. 2008) ("To ask for: REQUEST."); *Seek*, New Oxford American Dictionary (3d ed. 2010) ("[To] ask for (something) from someone."); *cf. Murray v. Town of Lincolnville*, 462 A.2d 40, 41-44 (Me. 1983) (using "seek" and "apply" interchangeably to describe the act of requesting permits from the Board of Environmental Protection and a local planning board).

[¶25]  Also, if we define "seek" to include steps taken to prepare to apply for a permit, it is not clear what preparatory acts would be sufficient to toll the

deadline. For example, the very act of entering into the contract zone agreement was a preparatory step toward securing a building permit, but was clearly insufficient to toll the deadline.

[¶26] Finally, to the extent that "seek" is ambiguous, and we do not believe it is, the stipulated record demonstrates clearly that the Driscolls did not toll the deadline. If Nancy believed that she had tolled the deadline, there would have been no reason for her to request an extension of the deadlines in the 2017 agreement. And if the City believed that the deadline had been tolled, it did not need to grant the requested extension. This mutual understanding is explicit in the text of the 2021 agreement, which states that the 2017 agreement "expired on November 20, 2019."

[¶27] We therefore hold that the 2017 agreement required the Driscolls to apply for a building permit before November 20, 2019, and that they failed to do so.

## 2. "Null and Void"

[¶28] We next consider whether the deadline provision nullified the 2017 agreement, or merely rendered it voidable by the City. The City argues that the 2017 agreement embraces a more lenient definition of the word "void,"

that is synonymous with "voidable."  The City also contends that it could waive

enforcement of the deadline provision.  Neither argument is convincing.

[¶29]  The 2017 agreement provides unequivocally that the Driscolls'

failure to seek a building permit by the final November 20, 2019, deadline

would "render this approval and Contract null and void."   Black's Law

Dictionary defines "null" as "[h]aving no legal effect" and as synonymous with

"void."  *Null*, Black's Law Dictionary (11th ed. 2019); *see Void*, Black's Law

Dictionary (11th ed. 2019) ("Of no legal effect . . . .").  Furthermore,

> The distinction between *void* and *voidable* is often of great practical importance.  Whenever technical accuracy is required, *void* can be properly applied only to those provisions that are of no effect whatsoever—those that are an absolute nullity.

*Void*, Black's Law Dictionary (11th ed. 2019).  While the word "void" may at

times be "used and construed as bearing the more liberal meaning of 'voidable'"

*id.*, its use here—coupled with the word "null" and read in context with the

language used in the 2017 agreement—leaves little room for doubt that the

stricter interpretation was intended.

[¶30]  It is also significant that the deadline operated not only on the

2017 agreement itself but also on the City's *approval* of the 2017 agreement.

By approving the 2017 agreement, the City was amending its zoning

ordinances.  *See Golder v. City of Saco*, 2012 ME 76, ¶ 11, 45 A.3d 697 (reviewing

a contract zone agreement as a zoning amendment). By purporting to void that approval after a certain period, the deadline operated as a sunset provision[9] that limited the duration of that amendment. The City is therefore incorrect when it argues that it could allow the 2017 agreement to remain in effect by waiving enforcement of the deadline provision. Once the deadline passed, the zoning amendment that allowed the City to enforce the 2017 agreement expired. The City could not "waive" that amendment back into existence. *Cf. Burr v. Town of Rangeley*, 549 A.2d 733, 734 (Me. 1988) (holding that town planning board could not extend approval of subdivision plan rendered "null and void" by town ordinance).

[¶31] For those reasons, we hold that the 2017 agreement became an absolute nullity after November 20, 2019, and could not thereafter be amended.

**D. The 2021 Agreement**

[¶32] The court held that the 2021 agreement was unlawful because (1) it was enacted in violation of the City's contract zoning ordinance and (2) it is preempted by 38 M.R.S. §§ 435-439 (2024), Maine's "Mandatory Shoreland Zoning" provisions.

---

[9] "Sunset clauses are statutory provisions that require a law to expire at a predetermined time unless it is renewed." Kristen Underhill & Ian Ayres, *Sunsets Are for Suckers: An Experimental Test of Sunset Clauses*, 59 Harv. J. on Legis. 101, 108 (2022).

18

[¶33]  The principal argument Appellants advance on this issue is one we have already rejected—that the 2021 agreement was merely an amendment of the 2017 agreement and therefore not subject to the laws in effect in 2021. Because we have determined that the 2017 agreement expired by its own terms, the 2021 agreement constitutes a new, independent agreement which, as of its effective date of September 7, 2021, attempts to enact a fresh amendment to the City's zoning ordinance.  As explained below, we agree with the Superior Court that the 2021 agreement is unlawful and void because it violates the contract zoning ordinance and is preempted by the Mandatory Shoreland Zoning provisions.

### 1.    City Ordinance

[¶34]  The City's contract zoning ordinance, as amended in early 2021, provides that applications for new contract zoning must first be considered by the Planning Board, which must then forward its recommendation to the City Council for final approval or disapproval.  Saco, Me., Zoning Ordinance § 230-1705(C)-(G) (2021).  If either body supports approval, it must make certain findings.[10]  *Id.* § 230-1705(F)-(G). The ordinance also prohibits contract

---

[10]  The required findings are whether

(1)  The rezoning is for land with an unusual nature or location;

zoning in the City's "RP" (resource protection) zone. *Id.* § 230-1705(B); *see id.* § 230-303 (defining the "resource protection overlay district").

[¶35]  Here, the City Council executed the 2021 agreement, effecting a zoning amendment, without consideration by or a recommendation from the Planning Board.  The Council also did not make any of the required findings. Further, the parties stipulated that Lot 202 is located in the resource protection zone.  Because the City violated its contract zoning ordinance when it enacted the 2021 agreement, the agreement is void.

## 2.  Mandatory Shoreland Zoning Provisions

[¶36]   The 2021 agreement is also preempted by the Mandatory Shoreland Zoning provisions.  "[S]tate statutes may preempt local ordinances either expressly or implicitly."  *Smith v. Town of Pittston*, 2003 ME 46, ¶ 24, 820 A.2d 1200*.*  The Mandatory Shoreland Zoning provisions expressly preempt zoning in "areas . . . within 250 feet of the upland edge of a coastal wetland"[11]

---

(2) The rezoning is consistent with the Comprehensive Plan;

(3) The rezoning is consistent with, but not limited to, the existing uses and permitted uses within the original zone; and

(4) The conditions proposed are sufficient to meet the intent of this section.

Saco, Me., Zoning Ordinance § 230-1705(F) (2021).

[11] "Coastal wetlands" include "any . . . beach . . . that is subject to tidal action during the highest tide level for the year" and "may include portions of coastal sand dunes."  38 M.R.S. § 436-A(1)(2024).

that does not adhere to "minimum guidelines" enacted by the Board of Environmental Protection (BEP). 38 M.R.S. §§ 435, 438-A(1)-(2) (2024). Under the BEP guidelines, residential lots adjacent to tidal areas may be no less than 30,000 square feet per dwelling unit and have no less than 150 feet of shore frontage per dwelling unit. 06-096 C.M.R. ch. 1000, § 15(A)(1)(a)(i) (effective Jan. 26, 2015).

[¶37] The 2021 agreement purports to allow residential development on a lot that does not conform to the BEP guidelines: Lot 202 is 5,450 square feet and has 50 feet of shore frontage. The record also clearly indicates that Lot 202 is within 250 feet of a coastal wetland and adjacent to a tidal area. The Mandatory Shoreland Zoning provisions therefore expressly preempt the 2021 agreement.[12]

---

[12] Dahlem cross-appealed from the Superior Court's denial of his motion for partial summary judgment on Count 1, which had asserted that the City is precluded from allowing the construction of a building on Lot 202. Because we affirm the Superior Court's grant of summary judgment on Counts 2, 3, and 4, it is unnecessary to reach Dahlem's cross-appeal of Count 1, and we therefore dismiss the cross-appeal as moot. *See Mainers for Fair Bear Hunting*, 2016 ME 57, ¶ 5, 136 A.3d 714.

Further, Dahlem argues that he was entitled to summary judgment on his claim in Count 5 that the 2021 agreement was inconsistent with the City's comprehensive plan. However, Dahlem stipulated to dismissal of that claim prior to appealing, so it is not properly before us. *See Jipson v. Liberty Mut. Fire Ins. Co.*, 2007 ME 10, ¶ 6, 912 A.2d 1250 ("We generally do not review appeals from a dismissal where the appealing party agreed to the dismissal.").

### III.  CONCLUSION

[¶38]  In conclusion, we hold that (1) Dahlem properly challenged the 2021 agreement by asserting claims for declaratory relief; (2) the 2017 agreement became null and void on November 20, 2019, and could not thereafter be amended; (3) the 2021 agreement was invalid and unlawful under the City's contract zoning ordinance; and (4) the 2021 agreement was preempted by the Mandatory Shoreland Zoning provisions.  We also dismiss Dahlem's cross-appeal on Counts 1 and 6 as moot.

The entry is:

> Judgment affirmed.  Cross-appeal dismissed as moot.

_____

Timothy S. Murphy, Esq. (orally), Prescott Jamieson Murphy Law Group, LLC, Saco, for appellant City of Saco

Jana Kenney, Esq. (orally), Bergen & Parkinson, LLC, Saco, and Luke Rossignol, Esq., Bemis & Rossignol, LLC, Presque Isle, for appellants Amarjit Singh Dhillon and Ajinder Kaur

Keith P. Richard, Esq. (orally), and Richard L. Qualey, Esq., Archipelago, Portland, for cross-appellant Michael Dahlem

York County Superior Court docket number CV-2021-216
For Clerk Reference Only